[888 NYS2d 538]

SYMBOL TECHNOLOGIES, INC., Appellant, v DELOITTE & TOUCHE, LLP, Respondent.

Second Department, October 27, 2009

**APPEARANCES OF COUNSEL**

*Lewis Johs Avallone Aviles, LLP*, Melville (*Michael G. Kruzynski, Thomas J. Dargan* and *Steven & Lee, P.C.* [*Daniel B. Huyett* and *William P. Thornton, Jr.*] of counsel), for appellant.

*Skadden, Arps, Slate, Meagher & Flom, LLP*, New York City (*Jay B. Kasner, Gregory A. Litt* and *Robert A. Fumerton* of counsel), and *Lamb & Barnosky, LLP*, Melville (*Scott M. Karson* of counsel), for respondent (one brief filed).

### OPINION OF THE COURT

AUSTIN, J.

In this action, inter alia, to recover damages for accounting malpractice, the plaintiff Symbol Technologies, Inc. (hereinafter Symbol), alleges, among other things, that the defendant, Deloitte & Touche, LLP (hereinafter Deloitte), in the annual audits it conducted for the fiscal years 1998 through 2001, failed to discover the fraud perpetrated by several members of Symbol's senior management to inflate corporate revenues and earnings. As a result of the fraud, Symbol was caused to pay out more than $100 million in unearned compensation to its senior management, to restate its financial statements for fiscal years 1998 through 2001, and to be subjected to investigations by the United States Securities and Exchange Commission and the Office of the United States Attorney for the Eastern District of New York.

Deloitte served and filed a pre-answer motion to dismiss the complaint. While the motion was pending, Symbol served and filed an amended complaint. By order dated June 16, 2008, the Supreme Court, treating Deloitte's motion to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7) and, in effect, pursuant to CPLR 3211 (a) (5), as a motion to dismiss the amended complaint, granted that branch of the motion which was, in effect, to dismiss the cause of action sounding in nonmedical professional malpractice as time-barred. The Supreme Court also determined that the amended complaint was barred by the doctrine of in pari delicto and that the remaining causes of action, alleging fraud and negligent misrepresentation, were duplicative of the malpractice cause of action, warranting their dismissal. We modify.

CPLR 3211 (a) Dismissal Standards

To obtain a dismissal pursuant to CPLR 3211 (a) (1), the defendant must establish that the documentary evidence which forms the basis of the defense be such that it resolves all factual issues as a matter of law and conclusively disposes of the plaintiff's claim (*see Leon v Martinez*, 84 NY2d 83 [1994]; *see also Sheridan v Town of Orangetown*, 21 AD3d 365 [2005]).

CPLR 3211 (a) (7) permits the court to dismiss a complaint that fails to state a cause of action. The complaint must be

liberally construed and the plaintiff given the benefit of every favorable inference (*see Leon v Martinez*, 84 NY2d 83 [1994]; *Aberbach v Biomedical Tissue Servs., Ltd.*, 48 AD3d 716 [2008]; *Mitchell v TAM Equities, Inc.*, 27 AD3d 703 [2006]). The court must also accept as true all of the facts alleged in the complaint and any factual submissions made in opposition to the motion (*see 511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144 [2002]; *Sokoloff v Harriman Estates Dev. Corp.*, 96 NY2d 409 [2001]; *Alsol Enters., Ltd. v Premier Lincoln-Mercury, Inc.*, 11 AD3d 493 [2004]). If the court can determine that the plaintiff is entitled to relief on any view of the facts stated, its inquiry is complete and the complaint must be declared legally sufficient (*see Campaign for Fiscal Equity v State of New York*, 86 NY2d 307, 318 [1995]; *see also Sokoloff v Harriman Estates Dev. Corp.*, 96 NY2d 409 [2001]; *Stucklen v Kabro Assoc.*, 18 AD3d 461 [2005]). While factual allegations contained in the complaint are deemed true, bare legal conclusions and facts flatly contradicted on the record are not entitled to a presumption of truth (*see Lutz v Caracappa*, 35 AD3d 673, 674 [2006]; *Matter of Loukoumi, Inc.*, 285 AD2d 595 [2001]).

Finally, CPLR 3211 (a) (5) permits the defendant to seek and obtain a dismissal of one or more causes of action asserted against it on the ground that the cause of action is barred by the statute of limitations.

Statute of Limitations

Here, the relevant statute of limitations is CPLR 214 (6), which provides that an action for nonmedical professional malpractice must be commenced within three years of the date of accrual. This three-year statute of limitations applies to all nonmedical professional malpractice claims "regardless of whether the underlying theory is based in contract or tort" (CPLR 214 [6]; *see Matter of R.M. Kliment & Frances Halsband, Architects [McKinsey & Co., Inc.]*, 3 NY3d 538, 541-542 [2004]; *Harris v Kahn, Hoffman, Nonenmacher & Hochman, LLP*, 59 AD3d 390, 391 [2009]; *RGH Liquidating Trust v Deloitte & Touche LLP*, 47 AD3d 516, 517 [2008]). Contrary to Symbol's contentions, the breach of contract cause of action alleging, inter alia, that Deloitte violated its agreement with Symbol to provide audit services for the fiscal years 1998 through 2001 in accordance with good and accepted professional standards is, in essence, an accounting malpractice claim which is governed by the three-year statute of limitations set forth in CPLR 214 (6).

Deloitte established through documentary evidence that Symbol's causes of action sounding in accounting malpractice accrued on or before March 26, 2002 (*see Ackerman v Price Waterhouse*, 84 NY2d 535, 541 [1994]; *Williamson v PricewaterhouseCoopers LLP*, 9 NY3d 1, 8 [2007]). Since the parties stipulated that this action was deemed to have been commenced on November 11, 2005,[1] which is after the expiration of the three-year statute of limitations, Deloitte sustained its initial burden of proving that the cause of action sounding in accounting malpractice was untimely (*see* CPLR 214 [6]; *Swift v New York Med. Coll.*, 25 AD3d 686, 687 [2006]; *Gravel v Cicola*, 297 AD2d 620, 620-621 [2002]). The burden then shifted to Symbol to aver evidentiary facts establishing that the malpractice cause of action fell within an exception to the statute of limitations or to raise a question of fact as to whether an exception is applicable (*see Lessoff v 26 Ct. St. Assoc., LLC*, 58 AD3d 610, 611 [2009]; *Gravel v Cicola*, 297 AD2d at 621).

■ The continuous representation doctrine is an exception to the statute of limitations and applies only where there is "a mutual understanding of the need for further representation on the specific subject matter underlying the malpractice claim" (*McCoy v Feinman*, 99 NY2d 295, 306 [2002]; *see Zorn v Gilbert*, 8 NY3d 933, 934 [2007]). Since facts alleged in a complaint are accepted as true on a motion to dismiss, are afforded a liberal interpretation, and are viewed in the light most favorable to the plaintiff (*see Leon v Martinez*, 84 NY2d 83 [1994]), Symbol's pleading is sufficient to establish that the parties mutually contemplated that Deloitte's work and representation for each audit year would continue after the issuance of the audit opinion/report and, therefore, the continuous representation doctrine applies. Symbol pleaded that "[w]hen undertaking the Symbol audits for the fiscal years 1998 through 2001, Deloitte contemplated that its work and representation on each audit year would continue beyond the issuance of the audit opinion" and that "[t]his contemplation is evidenced by Deloitte's opinions on prior years' financial statements, income statements and cash flow contained in each audit opinion."

---

1. Pursuant to an agreement effective November 11, 2005, the parties agreed to delay the filing of any lawsuits until November 11, 2006, or 30 days following delivery of notice of the intent to terminate the agreement. They also stipulated that any action commenced on or before the 30th day after the agreement was terminated, would be treated as if it had been commenced on November 11, 2005, for statute of limitations purposes.

While each of Deloitte's audits for the years 1998, 1999, 2000, and 2001 was governed by a separate and discrete engagement letter which explicitly stated that the service to be provided was to audit and report on Symbol's financial statements for a particular fiscal year (*see Williamson v PricewaterhouseCoopers, LLP*, 9 NY3d at 10-11), Symbol pleaded that Deloitte had a continuing obligation to remedy defects found in those statements and, in fact, did so. Further, Symbol's allegation that Deloitte continued to provide auditing services through the end of 2003 in connection with the restatement of its audits without seeking the execution of new engagement letters suggests the continuation of their professional relationship for the years 1998 to 2001, inasmuch as each of the letters of engagement provided for new agreements to be executed for additional or different auditing services (*see Williamson v Pricewaterhouse-Coopers LLP*, 9 NY3d 1 [2007]).

Likewise, addressing the scope of and fees for Deloitte's services, the various engagement letters do not mandate a contrary conclusion since "any request by [Symbol] to reissue [Deloitte's] report . . . would be subject to [the parties'] mutual agreement at such time and would be described in a separate engagement letter," as set forth in the audit engagement letter for the fiscal year ended December 31, 2000, between Deloitte and Symbol, dated November 15, 2000. However, no separate engagement letter was obtained by Deloitte for the remedial accounting services it performed through the end of 2003. Thus, the evidence submitted by Deloitte failed to definitively dispose of Symbol's claims pursuant to CPLR 3211 (a) (1) (*see Matter of Loukoumi, Inc.*, 285 AD2d 595 [2001]).

Based upon the pleadings and papers submitted on the motion to dismiss, the Supreme Court improperly determined that the cause of action sounding in accounting malpractice was time-barred (*see Zorn v Gilbert*, 8 NY3d 933 [2007]; *McCoy v Feinman*, 99 NY2d 295 [2002]).

In Pari Delicto

The doctrine of in pari delicto is an equitable defense based on agency principles which bars a plaintiff from recovering where the plaintiff is itself at fault (*see Ross v Bolton*, 904 F2d 819, 824-825 [1990]; *In re Food Mgt. Group, LLC*, 380 BR 677, 693-694 [2008]; *Abright v Shapiro*, 214 AD2d 496 [1995]; *Bullmore v Ernst & Young Cayman Is.*, 20 Misc 3d 667, 670 [2008]). Moreover, the misconduct of managers acting within the scope of their employment will normally be imputed to the corpora-

tion (see *Wight v BankAmerica Corp.*, 219 F3d 79, 86 [2000]; *Center v Hampton Affiliates*, 66 NY2d 782, 784 [1985]; *Christopher S. v Douglaston Club*, 275 AD2d 768, 769 [2000]). The underlying concept is that the actions of an agent can be imputed to a corporation when its agent acts within the scope of his or her employment (see *Center v Hampton Affiliates*, 66 NY2d at 784).

■ Under New York law, the doctrine of in pari delicto is subject to the "adverse interest" exception[2] (see *Center v Hampton Affiliates*, 66 NY2d 782 [1985]). In this case, Symbol's amended complaint is sufficient to trigger the adverse interest exception to the in pari delicto doctrine.

The "adverse interest" exception is a method by which a plaintiff corporation can demonstrate that its agent's actions should not be imputed to it. The corporation must show that the agent's fraud was entirely self-interested and that the corporation did not benefit in any way (see *546-552 W. 146th St. LLC v Arfa*, 54 AD3d 543 [2008]; *Capital Wireless Corp. v Deloitte & Touche*, 216 AD2d 663, 666 [1995]). If the agent was acting solely for his or her own benefit and to the detriment of the corporation, it cannot be said that the agent was acting in the scope of his or her employment (see *Center v Hampton Affiliates*, 66 NY2d at 784).

This exception has been defined very narrowly in New York (see *546-552 W. 146th St. LLC v Arfa*, 54 AD3d 543 [2008]). Under this narrow exception, management misconduct will not be imputed to the corporation if the officer acted entirely in his own interest and adversely to the interest of the corporation (see *Center v Hampton Affiliates*, 66 NY2d at 785).

> "The theory is that 'where an agent, though ostensibly acting in the business of the principal, is really committing a fraud for his own benefit, he is acting outside of the scope of his agency, and it would therefore be most unjust to charge the principal

---

**2.** Another exception to the in pari delicto defense is the "innocent insider" exception, which provides that if there were another agent within the corporation who had no knowledge of the fraud and who had the will and the ability to stop the fraud had it come to his or her attention, the in pari delicto defense will fail (see *In re CBI Holding Co., Inc.*, 311 BR 350 [2004]; *Bullmore v Ernst & Young Cayman Is.*, 20 Misc 3d 667, 672-673 [2008]). This exception has not been adopted in New York (see *Bullmore v Ernst & Young Cayman Is.*, 20 Misc 3d at 672-673; *Morgado Family Partners, LP v Lipper*, 6 Misc 3d 1014[A], 2004 NY Slip Op 51791[U] [2004]).

with knowledge of it' " (*Wight v BankAmerica Corp.*, 219 F3d 79, 87 [2000]).

The adverse interest exception applies only when the agent has "totally abandoned" the principal's interests and is acting entirely for his own or another's purposes (*Center v Hampton Affiliates*, 66 NY2d at 785).

In its amended complaint, Symbol set forth sufficient allegations that members of its senior management committed accounting fraud for their own benefit and totally abandoned its interest, thereby triggering the adverse interest exception. Specifically, in the amended complaint, Symbol alleged that

"26. During the period of 1998 to 2002, certain Symbol managers, including the Chief Operating Officer who later became the Chief Executive Officer, the Chief Financial Officer and a number of members of the sales and finance functions at Symbol engaged in actions to defraud [Symbol] of over $100 million in monetary and stock option bonuses awarded to them as performance bonuses based on the inflated and false financial results they created through their inflation of revenue and earning results. . . .

"160. The Identified Managers' actions in inflating Symbol's reported revenues and in manipulating Symbol's earnings and earnings per share were not in the interest of [Symbol] and were done solely to advance personal interests of the Identified Managers and for their personal financial benefit.

"161. The misconduct of the Identified Managers was entirely outside the scope of their employment and in enriching themselves at the expense of [Symbol] the Identified Managers had totally abandoned the interests of the Company.

"162. The misconduct of the Identified Managers did not inure to the benefit of [Symbol] but instead harmed [Symbol]."

As such, the amended complaint is sufficient to overcome Deloitte's in pari delicto defense. Accordingly, Symbol sufficiently alleged a cognizable cause of action to recover damages for accounting malpractice, thus barring dismissal of the complaint pursuant to CPLR 3211 (a) (7).

With respect to CPLR 3211 (a) (1), dismissal may only be granted where "the documentary evidence utterly refutes

plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]; *see Morales v 78 4th Ave. Corp.*, 57 AD3d 748, 748-749 [2008]). The documentary evidence submitted by Deloitte in support of its motion to dismiss does not completely refute Symbol's claims that its managers' actions were self-interested and harmed the corporation, and does not conclusively refute Symbol's factual allegations that the adverse interest exception is applicable.

Although Deloitte argues that Symbol entered into a so-called "Non-Prosecution Agreement" with the United States Securities and Exchange Commission (hereinafter the SEC) which would preclude the application of the adverse interest exception, Symbol never admitted that the members of its management who committed accounting fraud did so for the benefit of Symbol. Under the relevant provisions of the Non-Prosecution Agreement, Symbol acknowledged that, as a result of the conduct of certain of its employees and senior management, it had violated federal criminal law, filed materially false financial statements with the SEC and agreed to perform certain remedial actions. Such statements do not conclusively foreclose the application of the adverse interest exception to the in pari delicto defense.[3]

Remaining Causes of Action

Since the remaining causes of action arose from the same facts as the accounting malpractice causes of action and did not allege distinct damages, the Supreme Court properly dismissed the causes of action alleging fraud and negligent misrepresentation (*see Sitar v Sitar*, 50 AD3d 667, 670 [2008]; *Iannucci v Kucker & Bruh, LLP*, 42 AD3d 436, 437 [2007]).

Accordingly, the accounting malpractice cause of action alleged in the amended complaint was improperly dismissed at the pleading stage. The order is modified, on the law and the facts, by deleting the provision thereof granting that branch of the motion which was to dismiss the plaintiff's first cause of action sounding in accounting malpractice and substituting therefor a provision denying that branch of the motion, and as so modified, the order is affirmed.

RIVERA, J.P., FLORIO and BELEN, JJ., concur.

---

**3.** Similarly unavailing is documentation submitted by Deloitte concerning Motorola's acquisition of Symbol, which was announced in September 2006 and consummated in January 2007, well after the correction of Symbol's financial statements for the years 1998 through 2001 in late 2003.

Ordered that the order is modified, on the law and the facts, by deleting the provision thereof granting that branch of the motion which was to dismiss the first cause of action and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed, with costs to the plaintiff.