*533 OPINION OF THE COURT
Karen B. Rothenberg, J.
Defendant Joseph Agostino, former pastor at defendant St. John the Baptist Roman Catholic Church (church) in Brooklyn, moves, pursuant to CPLR 3211 (a) (7) and/or CPLR 3212, to dismiss the claims against him. Plaintiffs, Krystal G., an infant, and Vivian and Juan G., her parents, proceeding on their child’s and their own behalf, have sued Agostino and others[1] for negligently hiring, retaining and supervising defendant Augusto Cortez, the former assistant pastor, who allegedly sexually assaulted Krystal G.
Plaintiffs oppose all aspects of Agostino’s motion, and cross-move, pursuant to CPLR 3124, to compel defendant Cortez and the Vincentian defendants to provide certain requested discovery documents.
Defendant Cortez and the'Vincentian defendants cross-move, pursuant to CPLR 3103, to limit discovery and to compel all parties to execute a protective order, prepared by counsel for the Vincentian defendants and designating plaintiffs’ requested documents as “confidential” so that such documents remain inaccessible to the public.
Pertinent Facts and Procedural History
Plaintiffs’ amended complaint alleges that defendant Cortez sexually assaulted and abused the infant plaintiff at defendant St. John the Baptist School (school) on May 28, 2008, when she was 12 years old, by touching, holding and fondling her breast. Plaintiffs also claim that defendant Agostino, for whom Cortez worked, negligently hired, retained and/or supervised Cortez.
Agostino served as church pastor from September 2000 through May 2009 and is still employed by defendant Eastern Province. Agostino, as church pastor, bore responsibility for the daily operation and governance of defendant St. John the Baptist Parish (parish). Additionally, Agostino allegedly exerted *534 influence over defendant school, which was located across the street from the church and was where the sexual abuse purportedly occurred.
Defendant congregation in or around September 2003 made Cortez assistant church pastor. Cortez frequented defendant school and resided in defendant church’s local community house, located on the same block as defendant church and defendant school. Agostino served as the “Local Superior” at the Community House, from 2007 through the time of the alleged abuse, and had oversight responsibilities over Cortez and other Community House residents.
The affidavit of Juan G., infant plaintiffs father, avers that both defendant school’s principal and assistant principal will confirm that Agostino authorized Cortez’s presence at the school, even though school administrators objected to Cortez’s presence. In particular, the principal and assistant principal, according to Mr. G., were concerned about Cortez’s contact with the school children and the fact that he was summoning children out of class to perform chores unrelated to school work. Accordingly, the school’s administrators undertook to remove Cortez from school premises. However, Agostino allegedly overruled the administrators’ decision and validated Cortez’s continuing presence at the school.
Plaintiffs commenced this action on December 11, 2009 and filed an amended summons and amended complaint on January 27, 2010.[2] The amended complaint alleges, in essence, causes of action for: (1) sexual assault and battery, infliction of emotional distress and violation of the Penal Law against defendant Cortez; (2) negligent hiring, retention and supervision of defendant Cortez against all other defendants; (3) failure by defendants to properly train, supervise, instruct and manage Agostino so that he would properly supervise Cortez; and (4) loss of companionship and services of the infant plaintiff to each of her parents.
Plaintiffs served discovery demands on September 9, 2010, but defendant Cortez and the Vincentian defendants have asserted privilege and have refused to comply with those demands. The Vincentian defendants proposed, on September 29, 2010, that all parties execute a protective order which was written by *535 the Vincentian defendants’ counsel. Plaintiffs have refused to sign the protective order, resulting in this motion and cross motions.
The Parties’ Claims
Essentially, plaintiffs claim that Agostino negligently supervised and/or hired and retained Cortez because Agostino either knew or should have known, through “direct information, records, discipline, conversations, behavior, mannerisms, speech, and [Cortez’s] other conduct” that Cortez posed a sexual threat to the school children (plaintiffs’ affirmation in opposition to defendant Agostino’s dismissal/summary judgment motion 1Í10).
Agostino seeks dismissal as against him, pursuant to either CPLR 3211 (a) (7) or 3212. First, Agostino argues that plaintiffs cannot satisfy the elements of negligent supervision because (a) he is not Cortez’s employer; (b) he denied knowledge of Cortez’s propensity, if any, for sexual abuse; and (c) Cortez’s alleged abuse did not occur on his employer’s premises. Also, Agostino argues that any negligence attributed to him is automatically “imputed to [Agostino’s] employer, under the doctrine of respondeat superior, thereby alleviating any direct cause of action against [him],” because he did not commit an “independent tortious act” outside the scope of his employment (affirmation in further support of defendant [Agostino’s] motion to dismiss 1HÍ13, 14).
Plaintiffs cross-move, pursuant to CPLR 3126, to compel discovery as material and necessary and unprotected by privilege seeking compliance with their discovery demands.
Defendant Cortez and the Vincentian defendants assert privilege, and otherwise object to plaintiffs’ discovery demands. Defendant Cortez’s cross motion and a portion of the Vincentian defendants’ cross motion affirmatively seek a protective order, pursuant to CPLR 3103, governing confidential materials. In addition, the Vincentian defendants’ cross motion seeks a protective order, limiting discovery and precluding plaintiffs from inquiring into allegations of sexual misconduct by Agostino himself, and an in camera review of any discoverable files.
Discussion
The court on a dismissal motion pursuant to CPLR 3211 (a) (7) “must take the allegations asserted within a plaintiff’s complaint as true and accord plaintiff the benefit of every pos *536 sible inference, determining only whether the facts as alleged fit within any cognizable legal theory” (Samiento v World Yacht Inc., 10 NY3d 70, 79 [2008]; see also CPLR 3026 [“(p)leadings shall be liberally construed”]). Furthermore, a court may freely consider affidavits submitted by plaintiff to remedy any defects in the complaint (Leon v Martinez, 84 NY2d 83, 88 [1994]; see also Rovello v Orofino Realty Co., 40 NY2d 633, 635-636 [1976]; Uzzle v Nunzie Ct. Homeowners Assn., Inc., 70 AD3d 928, 930 [2010]) and must determine “whether the proponent of the pleading has a cause of action, not whether he has stated one” (Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]). However, “while factual allegations contained in the complaint are deemed true, bare legal conclusions and facts flatly contradicted on the record are not entitled to a presumption of truth” (Symbol Tech., Inc. v Deloitte & Touche, LLP, 69 AD3d 191, 194 [2009]).
Negligent Hiring and Retention
A claimant states a cause of action for negligent hiring and retention by adequately alleging that the “employer knew or should have known of the employee’s propensity for the conduct which caused the injury” (Bumpus v New York City Tr. Auth., 47 AD3d 653, 654 [2008] [internal quotation marks and citation omitted]; see also Jackson v New York Univ. Downtown Hosp., 69 AD3d 801, 801-802 [2010]; Kenneth R. v Roman Catholic Diocese of Brooklyn, 229 AD2d 159, 161, 163 [1997], cert denied 522 US 967 [1997], lv dismissed 91 NY2d 848 [1997] [Appellate Division, Second Department modified Kings County Supreme Court’s decision and granted motion to dismiss plaintiffs’ claim that the Roman Catholic Diocese of Brooklyn was negligent in hiring and failing to establish proper guidelines and procedures for screening and investigating priests since there is “no common-law duty to institute specific procedures for hiring employees unless the employer knows of facts that would lead a reasonably prudent person to investigate the prospective employee”]). Even assuming arguendo that Agostino was Cortez’s employer, plaintiffs allege no factual scenario allowing an inference that Agostino should have known that Cortez would present a sexual threat to the students at the school at the time Cortez was assigned to the church. Therefore, Agostino had no common-law duty to initiate an investigation absent facts that would have put Agostino on notice of Cortez’s propensity to engage in the claimed behavior.
*537 However, Agostino’s duty to investigate Cortez’s background for the protection of the school’s children would have arisen once facts existed which Agostino either knew or should have known about concerning Cortez’s unlawful sexual propensities. Consequently, Kenneth R.’s proscription against an employer’s initial duty to institute specific procedures for investigating employees does not apply regarding Cortez’s continued employment. Therefore, plaintiffs have adequately pleaded their negligent retention claim against Agostino.
Negligent Supervision
Stating a claim for negligent supervision likewise requires that the supervisor must have “kn[own] or should have known of the employee’s propensity for the conduct which caused the injury” (Kenneth R., 229 AD2d at 161). Defendant Agostino cites a case from the Southern District of New York to urge that three elements are necessary to state a cause of action for negligent supervision: (1) that the tortfeasor and defendant were in an employer-employee relationship; (2) that the employer knew or should have known of the employee’s propensity to commit the act(s) which caused the injury before the injury’s occurrence; and (3) that the tort occurred on the employer’s premises or with the employer’s chattels (Bouchard v New York Archdiocese, 719 F Supp 2d 255, 261 [2010], citing Ehrens v Lutheran Church, 385 F3d 232, 235 [2d Cir 2004]).
However, an employer-employee relationship is not required under New York case law (see e.g. Connell v Hayden, 83 AD2d 30, 50 [1981]). The court concluded in Connell that a coemployee could be liable for the torts of a coemployee: “(1) where one [coemployee] is charged with negligent supervision of the other or (2) where neither is a supervisor but both combined to cause plaintiffs injury” (id.). New York’s common law follows the Restatement (Second) of Agency, which expressly states that an agent may be liable for another agent’s torts if he negligently supervised the other agent (Restatement [Second] of Agency § 358).
Here, Agostino’s own affidavit states that he “was responsible for the spiritual and material well being of the community at St. John the Baptist parish, including oversight of its governance” and “was responsible for day-to-day operations of the Church” (Agostino affidavit 1i 2). It necessarily follows, drawing all favorable inferences for plaintiffs, that these oversight responsibilities included supervision of his assistant *538 pastor, Augusto Cortez. Therefore, a sufficient relationship exists between defendant Agostino, as supervisor, and Cortez, as Agostino’s subordinate, to sustain a cause of action for negligent supervision under New York law.
Prevailing on a negligent supervision claim, though, requires a claimant to prove that the defendant knew or should have known about his subordinate’s propensity for the conduct that caused the plaintiffs injury (see e.g. Mirand v City of New York, 84 NY2d 44, 49 [1994]; Jackson v New York Univ. Downtown Hosp., 69 AD3d at 801; Bumpus, 47 AD3d at 654; Peter T. v Children’s Vil., Inc., 30 AD3d 582, 586 [2006]; Kenneth R., 229 AD2d at 161). No statutory requirement exists that negligent supervision claims be pleaded with specificity (id. at 162) but “bare legal conclusions and/or factual claims which are flatly contradicted by documentary evidence should be dismissed pursuant to CPLR 3211 (a) (7)” (id. [internal quotation marks and citation omitted]).
The Appellate Division, Second Department in Kenneth R. upheld denial of a defendant’s motion to dismiss the plaintiffs’ negligent supervision claim. There, the appellate court considered the allegations made in plaintiffs’ bill of particulars that the defendant diocese received actual or constructive notice of the codefendant priest’s propensity to sexually abuse minors through alleged complaints made to the defendant diocese. The decision held that these allegations, if true, would sustain a cause of action sounding in negligent retention and negligent supervision (id. at 164).
Here, plaintiffs allege that the school’s administrators sought to forbid Cortez from coming onto the school’s premises because of their concern about Cortez’s excessive physical contact with the school’s children, and that Agostino overrode the school administrators’ wishes. The court takes these allegations as true, because defendants have not conclusively proved otherwise,[3] and views them, as required, in the light most favorable to plaintiffs (Samiento v World Yacht Inc., 10 NY3d at 79; Branham v Loews Orpheum Cinemas, Inc., 8 NY3d 931, 932 [2007]). Consequently, the facts alleged in the plaintiffs’ complaint, as *539 supplemented by Juan G.’s affidavit, may be reasonably construed to demonstrate that Agostino knew or should have known of Cortez’s propensity to commit the sexual abuse that plaintiffs allege occurred.
Finally, Agostino’s argument that New York law requires that a negligent supervision claim involves tortious conduct committed with the defendant’s chattels or on the defendant’s property is unpersuasive. D’Amico v Christie (71 NY2d 76 [1987]), cited by Agostino, concerns the specialized duty to control and supervise intoxicated persons, rather than the more general negligent supervision claim at issue in the present case. There, the Court of Appeals refused to extend a landowner’s duty to supervise subordinates to alcohol providers and their inebriates in light of the Dram Shop Act (General Obligations Law § 11-101).[4] This case does not involve a third-party’s duty to supervise inebriants, and D’Amico does not control the present case, and it is thus unnecessary for plaintiffs to allege that Cortez’s tort was committed on his employer’s premises or with his employer’s chattels.[5]
In summary, a sufficient relationship exists between Cortez and Agostino to create Agostino’s duty to supervise Cortez, and plaintiffs’ amended complaint and supporting papers adequately allege that Agostino knew or should have known of Cortez’s propensity to engage in the alleged tortious conduct. Consequently, plaintiffs have a cause of action sounding in negligent supervision and negligent retention.
Respondeat Superior
In addition, Agostino argues for dismissal on the operation of the respondeat superior doctrine. However, the doctrine does not ordinarily operate to extinguish the principal tortfeasor’s liability because the tortious conduct fell within the scope of the principal tortfeasor’s employment. Rather, respondeat superior allows a claimant, at his or her option, to recover from a person or entity that is vicariously liable for the acts of the principal tortfeasor. It does not automatically impute liability *540 from an employee to his employer. Therefore, the mere fact that Cortez might have been acting within the scope of his employment does not, contrary to Agostino’s contention, “alleviat[e] any direct cause of action” against Agostino.
The Appellate Division, Second Department in Segal v St. John’s Univ. (69 AD3d 702, 703 [2010]) held that “[generally, when a plaintiff seeks to recover damages against an employer based on an employee’s actions committed within the scope of his or her employment, the employer is liable under the doctrine of respondeat superior, not negligent hiring or supervision.” This policy underlying this rule seeks to remove the potential for an employer to be doubly liable for an employee’s single tortious act. However, Segal does not control in this case. Agostino is not Cortez’s employer, and Segal applies only to negligent hiring, retention and supervision claims against employers. Thus, it is inconsequential if Agostino was acting within the scope of his employment when he supervised Cortez because plaintiffs here are suing Agostino — a supervisor, not an employer — for negligent supervision. Second, even assuming Agostino was Cortez’s employer, Cortez — an employee — was acting outside of the scope of his employment when he allegedly sexually abused the infant plaintiff.
Agostino further incorrectly relies on several decisions for the proposition that an employee cannot be held liable for torts committed within the scope of his or her employment absent an “independent tortious act.” The Appellate Division, Second Department provided a summary of this area of the law in Courageous Syndicate v People-To-People Sports Comm. (141 AD2d 599, 600 [1988] [internal quotation marks and citations omitted]) by relying on the Court of Appeals decision in Murtha v Yonkers Child Care Assn. (45 NY2d 913, 915 [1978]):
“Generally, a director of a corporation is not personally liable to one who has contracted with the corporation on the theory of inducing a breach of contract, merely due to the fact that, while acting for the corporation, he has made decisions and taken steps that resulted in the corporation’s promise being broken. Moreover, [a] corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith . . . [and did not commit] independent torts or predatory acts directed at another. The complaint must allege that the officers’ or directors’ acts were *541 taken outside the scope of their employment or that they personally profited from their acts” (see also Burger v Brookhaven Med. Arts Bldg., 131 AD2d 622, 623 [1987]; Citicorp Retail Servs. v Wellington Mercantile Servs., 90 AD2d 532, 532 [1982]; Buckley v 112 Cent. Park S., Inc., 285 App Div 331, 334 [1954]).
Here, breach of contract is neither alleged nor apparent from the pleadings. Therefore, even assuming Agostino did not commit an “independent tortious act,” the argument that Agostino’s liability is automatically imputed to his employers under Murtha must be rejected. In any event, the Appellate Division, Second Department unequivocally held in Bellinzoni v Seland (128 AD2d 580, 580-581 [1987]) that a corporate officer or agent may be found liable for negligently supervising a third party that was responsible for the plaintiff’s injury, even if that corporate officer was acting in his or her official capacity. Thus, even if Agostino is a corporate agent or officer acting within the scope of his employment, he may still be liable to plaintiffs.
Plaintiffs’ amended complaint, together with Juan G.’s affidavit, sufficiently alleges a cause of action sounding in negligent retention and supervision under CPLR 3211 (a) (7), and Agostino’s arguments that his potential liability is automatically imputed to his employer are without merit. Therefore, the motion to dismiss under 3211 (a) (7) is denied with respect to plaintiffs’ claims of negligent retention and supervision.
Discovery
CPLR 3212 (f) authorizes denying a summary judgment motion if it appears from affidavits submitted in opposition that facts essential to justify opposition may exist but cannot yet be stated. Here, discovery has not yet taken place and Juan G.’s affidavit references discoverable materials, exclusively within defendants’ control, that may support plaintiffs’ contention that Agostino either knew or should have known of Cortez’s propensity to act in the manner that caused plaintiffs’ injuries (see n 12). Therefore, Agostino’s motion for summary judgment is denied as premature.
Plaintiffs cross-move to compel defendant Cortez and the Vincentian defendants to provide plaintiffs various files/documents and to fully respond to discovery demands. Plaintiffs, in particular, seek: (1) disclosure of documents contained in Cortez’s privilege log; and (2) full responses, collectively, to items 1, 2, 4, *542 6, 8, 11, 12, 14, 18, 20, 22 and 23-28 of their September 9, 2010 discovery demands.
Defendant Cortez and the Vincentian defendants each respond by cross-moving for an order compelling the parties herein to execute a protective order, written by the Vincentian defendants’ counsel, that would categorize and seal numerous documents as confidential, or, upon denial of Agostino’s motion to dismiss, limiting discovery. The Vincentian defendants also seek to preclude plaintiffs from inquiring into allegations of sexual misconduct by Agostino, and to allow the Vincentian defendants to provide the personnel files of Cortez and Agostino to the court for an in camera review to determine which documents should be disclosed.
The parties dispute whether files/documents referenced in Cortez’s privilege log are discoverable. Defendant Cortez and the Vincentian defendants state that these files/documents, self-described as a “plan” and a “report,” contain “inter-priest communications related to Father Cortez’s priestly duties and vocation” and contend that these documents are privileged due to ‘‘religious/spiritual [considerations]; church doctrine; priest-penitent privilege; [and the] First Amendment of the U.S. Constitution” (defendant Cortez’s privilege log, annexed to his cross motion as exhibit A, at 2).
CPLR 3101 (a) grants litigants a broad scope in discovering materials by providing that “[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof.” “The words, ‘material and necessary,’ are ... to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason” (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968]). Further, the party seeking discovery must “demonstrate that the method of discovery sought will result in the disclosure of relevant evidence or is reasonably calculated to lead to the discovery of information bearing on the claims” (Foster v Herbert Slepoy Corp., 74 AD3d 1139, 1140 [2010] [internal quotation marks and citations omitted]).
However, “litigants are not without protection against . . . unnecessarily onerous application [of the] discovery statutes . . . [as] competing interests must always be balanced; the need for discoveiy must be weighed against any special burden to be borne by the opposing party” (Andnn v 302-304 Mott St. Assoc., *543 94 NY2d 740, 747 [2000] [internal quotation marks and citations omitted]).
The Free Exercise and Establishment Clauses of the United States Constitution’s First Amendment do not preclude the exchange of any documents or items that plaintiffs seek. While the state may not foster “excessive government entanglement with religion” (Lemon v Kurtzman, 403 US 602, 613 [1971] [internal quotation marks and citation omitted]), the First Amendment only proscribes courts from defining the standard of care that a religious practitioner owes a congregant when providing spiritual guidance (see Langford v Roman Catholic Diocese of Brooklyn, 271 AD2d 494, 495 [2000] [dismissing “clergy malpractice” claim because it would require “a determination concerning (the priest’s) duties as a member of the clergy offering religious counseling to the plaintiff”]; see also Wisconsin v Yoder, 406 US 205, 215 [1972] [“to have the protection of the Religion Clauses, the claims must be rooted in religious belief’]).
Courts can, and must, resolve issues where “ ‘neutral principles of law . . . can be applied without “establishing” ’ ” church doctrine to resolve the dispute (Kelley v Garuda, 36 AD3d 593, 595 [2007], quoting Presbyterian Church in U. S. v Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 US 440, 449 [1969]). Here, plaintiffs’ claims involve sexual assault and battery and negligent supervision of a subordinate’s physical contact with a child. Hence, the First Amendment’s Establishment Clause protection does not bar plaintiffs’ discovery.
CPLR 4505, the so-called “priest-penitent” privilege, also does not provide defendants with blanket immunity from discovery of documents and other items which might involve religious subject matter. Applying the privilege .involves “whether the communication in question was made in confidence and for the purpose of obtaining spiritual guidance” (People v Carmona, 82 NY2d 603, 609 [1993]). The privilege “may not be invoked to enshroud conversations with wholly secular purposes solely because one of the parties to the conversation happened to be a religious minister” {id.; see also Matter of Keenan v Gigante, 47 NY2d 160, 166 [1979], cert denied 444 US 887 [1979] [“(t)he priest-penitent privilege arises not because statements are made to a clergyman. Rather, something more is needed ... for it is only confidential communications made to a clergyman in his spiritual capacity which the law endeavors to protect”]).
*544 Here, defendant Cortez and the Vincentian defendants argue that documents placed into their privilege log should not be discovered because those documents contain “inter-priest communications” and are confidential, under a religious/spiritual or church doctrine immunity. However, they provide no legal support for such immunities. Cortez may qualify as the type of “penitent” that CPLR 4505 contemplates. However, Agostino remained responsible for the daily operations and governance of the parish and the school where and when the alleged abuse occurred, and had supervisory duties as the “Local Superior” of the building where Cortez lived. These factors make it likely that “inter-priest communications” would contain the sort of day-to-day correspondence that any supervisor might have with subordinates. The fact that the files/documents in the privilege log have been identified as a plan and a report suggest that they were not confidential confessions. There is, therefore, a good faith basis for the potential relevancy of these communications. However, the documents in the privilege log may also contain communications under the ambit of CPLR 4505’s protection. Consequently, all documents responsive to items one and two of plaintiffs’ September 9 discovery demands, including those contained in Cortez’s and the Vincentian defendants’ privilege logs, will be provided to the court for an in camera review to determine which communications, if any, are privileged.
Plaintiffs’ discovery demand item 11 is stricken as Agostino’s and Cortez’s medical/psychological reports are privileged under CPLR 4504 and CPLR 4507. Discovery demand item 22 is stricken as plaintiffs’ negligent supervision claim against Agostino does not implicate Agostino’s sexual conduct and, therefore, documents pertaining to his care, treatment and counseling for improper sexual conduct are not relevant. In addition, item 22 is stricken regarding both Agostino and Cortez only to the extent it requests documents privileged under CPLR 4504 and CPLR 4507.
Items 25, 26, 27 and 28 are stricken, without prejudice, as overbroad. Plaintiffs may serve a new demand which seeks more specific and limited discovery requests (see Accent Collections, Inc. v Cappelli Enters., Inc., 84 AD3d 1283, 1284 [2011]; Merkos L’Inyonei Chinuch, Inc. v Sharf, 59 AD3d 408, 410 [2009]; Watson v Esposito, 231 AD2d 512, 516 [1996, Goldstein, J., concurring], appeal dismissed 89 NY2d 915 [1996] [plaintiffs request for “ ‘(a)ll documents invoices and bills regarding medical care and treatment in plaintiffs possession’ and ‘(i)nsurance *545 forms, bills, documents, and papers’ ” categorized as over-broad]).
Defendants must respond to plaintiffs’ discovery demands 4, 6, 8, 23 and 24, and, as to demands 12, 14, 18, and 20, defendants must respond to the extent that they shall submit copies of those items requested, limited in time to those issued or in effect during the time Cortez served under Agostino’s supervision.
Defendants’ request that plaintiffs be precluded from inquiring at Agostino’s deposition about prior claims of Agostino’s own sexual misconduct is granted.
Finally, defendant Cortez’s cross motion and that branch of the Vincentian defendants’ cross motion to compel the parties to sign a protective order categorizing and sealing many discovered items as confidential is denied, without prejudice, and may be remade on a document by document basis. Sealing documents from public review requires making an “independent determination of . . . ‘good cause’ ” which, in turn, requires “weighing the interests of the public against the interests of the parties” (Mancheski v Gabelli Group Capital Partners, 39 AD3d 499, 502 [2007]). The party seeking to seal the documents “must demonstrate compelling circumstances” (id.).
However, no document shall be filed with the court or otherwise made public without redaction of any party’s present address, telephone number and/or Social Security number.
Accordingly it is ordered that defendant Agostino’s motion to dismiss is granted as to plaintiffs’ negligent hiring claim, only; and it is further ordered that defendant Agostino’s motion to dismiss is denied as to plaintiffs’ negligent supervision and retention claims; and it is further ordered that the branch of defendant Agostino’s motion for summary judgment is denied; and it is further ordered that documents responsive to items one and two of plaintiffs’ September 9, 2010 discovery demands, including those contained in Agostino’s and Cortez’s privilege log, are to be provided to this court, within 20 days, for in camera review to determine which communications, if any, are privileged; and it is further ordered that plaintiffs’ discovery demands 4, 6, 8, 11, 12, 14, 18, 20, 22, 23 and 24 are granted in part and denied in part, described hereinabove; and it is further ordered that plaintiffs’ discovery demands 25, 26, 27 and 28 are stricken; and it is further ordered that the branch of defendants’ cross motion for a protective order precluding plaintiffs *546 from inquiring about Agostino’s alleged sexual misconduct is granted; and it is further ordered that defendants’ cross motion to compel the parties to execute the proposed protective order is denied.

. Plaintiffs have alleged negligent hiring, retaining and supervising of defendant Cortez by all other defendants. Some of those defendants, namely, defendants Agostino, Congregation of the Mission of St. Vincent De Paul of Germantown (congregation), sued herein as Congregation of the Mission of St. Vincent De Paul, and Eastern Province of the Congregation of the Mission of St. Vincent De Paul (Eastern Province) are herein collectively referenced as the “Vincentian defendants.” However, that designation excludes the Vice Province of the Congregation of the Mission of St. Vincent De Paul, which has not appeared in this case.

. The amended summons and amended complaint reflect the correct spelling of defendant Agostino’s name and are otherwise identical with the original summons and complaint.

. Agostino’s bald allegation in his affidavit that he was “unaware of any history of or prior propensity for sexual misconduct as has been alleged against Augusto Cortez” and “neither knew nor should have known of Augusto Cortez’s propensity for the conduct which caused the alleged injury,” clearly does not qualify as documentary evidence that would conclusively refute facts alleged by plaintiffs (Agostino affidavit H 8).

. The Dram Shop Act limits liability for injuries caused by inebriates to those that unlawfully sell alcohol, rather than imposing a general duty on all providers of alcohol to reasonably supervise inebriates (see e.g. D’Amico, 71 NY2d at 86-87).

. Plaintiffs, in any event, likely satisfy DAmico, if it were applicable, because the alleged tortious acts were committed on the school’s premises, and it is reasonable to assume, based on the pleadings and supporting papers, that Cortez’s employer also owned the school.