[—— NYS2d ——]

In the Matter of MARIA V. FARROW, Also Known as MIA FARROW, as Parent of DYLAN O. FARROW, an Infant, Respondent, v WOODY ALLEN, Respondent.

In the Matter of MARIA V. FARROW, Also Known as MIA FARROW, as Parent of MOSES A. FARROW, an Infant, Respondent, v WOODY ALLEN, Respondent. FREDERIC M. KASS, Nonparty Appellant.

First Department, December 2, 1993

## APPEARANCES OF COUNSEL

*JoAnn E. Macbeth* of counsel, Washington, D.C. *(Fred S. Souk* and *Nancy J. Kriegel* with her on the brief; *Crowell & Moring,* attorneys), for nonparty appellant.

*Barry Michael Okun* of counsel, New York City *(Eleanor B.*

*Alter* and *Martin D. Juvelier* with him on the brief; *Rosenman & Colin,* attorneys), for Maria Farrow, respondent.

## OPINION OF THE COURT

ELLERIN, J.

At issue on this appeal is the scope of a waiver of the physician-patient privilege.

The underlying proceeding in this case seeks to vacate the respondent Allen's adoption of two children, who are also the adopted children of petitioner Farrow. Petitioner moved before the Surrogate to compel the depositions of several nonparty psychiatrists, including the appellant, Dr. Frederic M. Kass, one of whose patients is another child of petitioner, Soon-Yi Previn. It is claimed that Soon-Yi has communicated information to Dr. Kass which is material and relevant to the within proceeding. While appellant Kass resisted deposition on the ground that his testimony was protected by the physician-patient privilege, petitioner contends that any such privilege was waived by appellant's release, with his patient's authorization, of a letter dated January 26, 1993, which dealt with certain matters revealed to him by his patient during the course of treatment. Appellant does not deny that he sent the letter with his patient's authorization, but argues that this limited disclosure did not act as a waiver of the physician-patient privilege in the present context.

The Surrogate found that since Dr. Kass' patient had partially waived the privilege by publication, appellant could be deposed, but only concerning "the area of communications contained in the letter." It is that order which is the subject of this appeal.

The physician-patient privilege, which was unknown at common law *(Koump v Smith,* 25 NY2d 287, 293), is statutorily codified in CPLR 4504 (a), which provides, in pertinent part, "Unless the patient waives the privilege, a person authorized to practice medicine * * * shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity".

Although frequently criticized as an unnecessary hindrance to the truth-finding function of the courts *(see, Williams v Roosevelt Hosp.,* 66 NY2d 391, 395-396; *Koump v Smith, supra,* at 293), the privilege has consistently been recognized by the courts of this State as necessary " 'to protect those who are

required to consult physicians from the disclosure of secrets imparted to them, to protect the relationship of patient and physician and to prevent physicians from disclosing information which might result in humiliation, embarrassment, or disgrace to patients'." *(People v Al-Kanani,* 33 NY2d 260, 264, quoting *Steinberg v New York Life Ins. Co.,* 263 NY 45, 48-49; *see also, Dillenbeck v Hess,* 73 NY2d 278, 285-286.) It is clear, however, that, like any evidentiary privilege, the physician-patient privilege only extends to protect information intended to be confidential *(People v Decina,* 2 NY2d 133, 145; *Smith v International Paper Co.,* 142 AD2d 858, 860; 58 NY Jur 2d, Evidence and Witnesses § 854, at 539-541). "This provision of confidentiality encourages the patient to seek medical treatment and to be frank in describing his or her symptoms to the physician so that the most effective treatment can be obtained". *(Matter of Camperlengo v Blum,* 56 NY2d 251, 254-255.) A particularly compelling rationale for confidentiality exists in a case involving a psychiatrist, since the very nature of psychiatric treatment renders privacy essential. *(See,* Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 4507, at 9.)

While the privilege protects not only communications, but "any medical information acquired by the physician through the application of professional skill or knowledge" *(Dillenbeck v Hess, supra,* at 284, n 4), it does not protect the facts themselves, and therefore will not prevent the patient from being asked to reveal the facts and incidents of his or her medical history *(Williams v Roosevelt Hosp., supra,* at 396). Parenthetically, it may be noted that while information imparted to appellant comes within the purview of the physician-patient privilege because he is a psychiatrist, communications with psychologists are also protected by the separate provisions of CPLR 4507.

■ In this case, consideration of whether the physician-patient privilege existing between Dr. Kass and his patient Soon-Yi Previn was to any degree waived must necessarily start with the letter of January 26, 1993. Appellant asserts that his patient authorized him to prepare and submit the letter to the Yale/New Haven Sexual Abuse Clinic, an agency which was working at the behest of the State of Connecticut to prepare a report in relation to a criminal investigation with which neither appellant nor his patient had any direct involvement. Appellant claims that the letter was a confidential communication intended only for the mental health profes-

sionals at the clinic and that he so informed the clinic. Petitioner Farrow, however, vigorously disputes that the permission given by appellant's patient regarding the letter's distribution was of so narrow a scope, and there is some evidence supporting that position, including the fact that the letter was captioned solely, "To whom it may concern," was not addressed to the clinic, and did not itself contain any indication as to the persons to whom its release was authorized. Moreover, it is clear that the letter was not kept confidential and that it has in fact come into the hands of attorneys for both parties to the proceeding.

Whatever limits on disclosure of the letter may have been intended by Dr. Kass' patient, the very fact of such disclosure foreclosed any claim of privilege as to the information contained in the letter itself. As already noted, the physician-patient privilege only applies to protect communications which have been made in confidence as well as in the context of the physician-patient relationship. It follows therefore that, even if the information was intended to remain confidential when it was communicated, once a patient puts the information into the hands of a third party who is completely unconnected to his or her treatment and who is not subject to any privilege, it can no longer be considered a confidence and the privilege must be deemed to have been waived as to that information *(see, People v Figueroa,* 173 AD2d 156, 159; *People v Hawkrigg,* 138 Misc 2d 764, 765-766; *see also, In re Von Bulow,* 828 F2d 94, 103). Thus, even assuming that appellant and his patient reasonably, if incorrectly, anticipated that the letter and its contents would go no further, its release to clinicians at the Yale/New Haven clinic, who had no relationship to the treatment of appellant's patient, is sufficient to waive the privilege as to the information contained in the letter itself.

It is irrelevant here that it was appellant, rather than his patient, who released the letter containing the otherwise confidential information. While it is the patient who holds the privilege and, therefore, only the patient who may waive it *(Dillenbeck v Hess,* 73 NY2d, *supra,* at 289; *Prink v Rockefeller Ctr.,* 48 NY2d 309, 314; Richardson, Evidence § 434 [Prince 10th ed]), there is no basis in logic to differentiate between a situation where the patient conveys the information directly to the unconnected third party and a situation, as here, where the patient authorizes his or her physician to convey such information *(see, Workman v Boylan Buick,* 36 AD2d 978; *In*

*re Von Bulow, supra,* at 100). Clearly, in either situation, the patient has consented to the disclosure.

■ Notwithstanding our conclusion that the physician-patient privilege is unavailable here to shield the contents of the letter of January 26, 1993,* we find, contrary to the Surrogate, that this does not imply a waiver as to other normally privileged communications made to appellant even if they concern the subject areas involved in the letter, and that, as a result, no deposition may be compelled.

It is argued that once appellant's patient waived the privilege, she waived it for all time *(Strader v Collins,* 280 App Div 582), and that the scope of that waiver is so broad as to entitle petitioner Farrow to disclosure of any information in the appellant doctor's possession concerning "the same or any related condition which would otherwise have been within the purview of the privilege." (5 Weinstein-Korn-Miller, NY Civ Prac ¶ 4504.18, at 45-277.)

In determining the scope of a waiver effected by a patient's disclosure, however, there must be some consideration, of the circumstances under which the disclosure took place and its impact on the opposing party. Ordinarily, the question before the courts is the appropriate scope of a waiver that is made in a judicial setting. Perhaps the most common example is that of a patient who is deemed to have waived the privilege by bringing an action that puts his or her medical condition at issue. *(See, Koump v Smith,* 25 NY2d 287, *supra; Prink v Rockefeller Ctr.,* 48 NY2d, *supra,* at 316; *St. Clare v Cattani,* 128 AD2d 766, 767.) A defendant may similarly be deemed to have waived the privilege by putting his or her medical condition at issue and tendering medical proof *(see, People v Al-Kanani,* 33 NY2d 260, *supra; Koump v Smith, supra).* A nonparty witness may also be held to have waived the privilege by voluntarily revealing privileged communications on direct examination during testimony at a trial or deposition *(see, e.g., De Silva v Rosenberg,* 129 AD2d 609). In any situation of this type, it is recognized that it is unfair for the opposing party in a litigated controversy to have the patient "use this privilege both as a sword and a shield, to waive when it enures to her advantage, and wield when it does not" *(McKinney v Grand St., Prospect Park & Flatbush R. R.,* 104

---

* This conclusion does not, of course, determine any other issues regarding the ultimate admissibility of the letter since they are not before us on this appeal.

NY 352, 355). Thus, once the patient has voluntarily presented a picture of his or her medical condition to the court in a particular court proceeding, it is only fair and in keeping with the liberal discovery provisions of the CPLR to permit the opposing party to obtain whatever information is necessary to present a full and fair picture of that condition *(see, Daniele v Long Is. Jewish-Hillside Med. Ctr.,* 74 AD2d 814; *Brooks v Hausauer,* 51 AD2d 660). In such a situation, the type of broad waiver argued for by petitioner is appropriate, and the opposing party may generally obtain and introduce any other evidence in the possession of the physician which is " 'material and necessary in the prosecution or defense of [the] action' " *(Cynthia B. v New Rochelle Hosp. Med. Ctr.,* 60 NY2d 452, 457, quoting CPLR 3101 [a]; *see also,* CPLR 3121).

However, that is not the setting in which the subject information is sought. Here, the release of the January 26, 1993 letter was completely extrajudicial, and the information contained in it was not released in connection with the instant proceeding or any other litigated proceeding. Its release to the Yale/New Haven clinic, which was conducting a preliminary investigation on behalf of the State of Connecticut, did not operate in any way to put the medical condition of Dr. Kass' patient before a court in a manner that would prejudice an opposing party.

Significantly, in the instant proceeding there has been no attempt whatsoever to affirmatively use the information in the letter against petitioner Farrow or to her disadvantage. Since petitioner can hardly claim to be prejudiced by information in a letter that has not been introduced against her, we must reject her argument that any further intrusion is warranted into the communications between appellant and his patient in order to ascertain whether the letter provides a full or fair picture of the subject matter discussed therein. As petitioner has suffered no prejudice, fairness does not demand the suspension of the physician-patient privilege as to other information obtained by appellant in the course of treatment. *(See, In re Von Bulow, supra; Matter of Creekmore,* 1 NY2d 284.)

We conclude, therefore, that since the letter of January 26, 1993 has never to this point been used in a judicial setting as a sword, there is no reason to suspend appellant's right to invoke the physician-patient privilege, to shield any disclosures made to him by his patient beyond the information as to

which his patient has actually surrendered confidentiality, i.e., the contents of the letter which speaks for itself.

Accordingly, the order of the Surrogate's Court, New York County (Renee Roth, S.), entered on or about May 18, 1993, which granted, in part, petitioner's motion to compel a deposition of nonparty witness Frederic M. Kass, M.D., should be reversed, on the law, and the motion denied, without costs.

Motion to seal the records is granted.

CARRO, J. P., WALLACH and ROSS, JJ., concur.

Order, Surrogate's Court, New York County, entered on or about May 18, 1993, reversed, on the law, without costs, and the motion to compel deposition of appellant denied. Motion to seal the records is granted.