Melfe v Roman Catholic Diocese of Albany, N.Y. (2021 NY Slip Op 04179)





Melfe v Roman Catholic Diocese of Albany, N.Y.


2021 NY Slip Op 04179


Decided on July 1, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 1, 2021

532340
[*1]David F. Melfe et al., Respondents,
v
Roman Catholic Diocese of Albany, New York, Appellant, et al., Defendants.

Calendar Date:May 26, 2021

Before:Egan Jr., J.P., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

Tobin and Dempf, LLP, Albany (Michael L. Costello of counsel) and Phelan Phelan & Danek, LLP, Albany, for appellant.
Smalline and Harri, Albany (Martin D. Smalline of counsel), for respondents.
Jeff Anderson & Associates, PA, New York City (Jeffrey R. Anderson of counsel) and LaFave Wein & Frament, PLLC, Albany (Cynthia S. LaFave of counsel), for Zero Abuse Project, amicus curiae.



Pritzker, J.
Appeal from an order of the Supreme Court (Mackey, J,), entered October 7, 2020 in Albany County, which, among other things, granted plaintiffs' motion to compel discovery.
Plaintiffs are siblings who commenced this action in August 2019 pursuant to the Child Victims Act (see CPLR 214-g [hereinafter CVA]) for injuries sustained as a result of alleged sexual, physical and emotional abuse committed by defendant Francis P. Melfe (hereinafter Melfe) while he was employed as a priest by defendant Roman Catholic Diocese of Albany (hereinafter the Diocese). As relevant here, Melfe is included on a list maintained by the Diocese of priests credibly accused of sexual abuse, and he worked as a priest at St. Patrick's Church in the City of Albany from 1969 to 1970, and previously as a pastor at the Immaculate Conception Church in the City of Schenectady, Schenectady County from 1969 to 1979, at which point he left the priesthood. Plaintiffs allege that for a span of approximately 10 years, from 1969 to 1979, Melfe sexually assaulted them, forced their inebriation and physically and mentally abused them during his tenure at St. Patrick's and the Immaculate Conception. Plaintiffs further allege that the Diocese had knowledge of this abuse and was complicit in its continuance. In their complaint, plaintiffs assert several causes of action, including that the acts of the Diocese and its Bishop, defendant Howard J. Hubbard (hereinafter the Bishop), constitute negligent supervision and reckless and careless disregard for plaintiffs' health. The Diocese and the Bishop answered separately.[FN1]
For purposes of discovery, plaintiffs initially requested the employment file of Melfe, among other things. Plaintiffs then demanded that defendants disclose the Diocese's files pertaining to six nonparty priests who were removed from the Diocese in 2002 after the US Conference of Bishops mandated a zero-tolerance policy for pedophilia in the Catholic Church. Plaintiffs narrowed their demands to include only those portions of the files of the aforementioned six nonparty priests that "involve the complaints and correspondences [forming] the basis of the discharges" or transfers, as well as correspondence between the Diocese and the Archdiocese of New York concerning the discharges or transfers. The Diocese and the Bishop separately objected to this discovery demand, arguing, among other things, that plaintiffs sought the production of privileged communications not related to Melfe.
In May 2020, plaintiffs filed the instant motion to compel production of files relative to the six nonparty priests pursuant to CPLR article 31. Plaintiffs argued that discoverable materials within the files of the six nonparty priests "will establish uniform actions by [the Bishop] sufficient to demonstrate a pattern or routine from which it can be inferred that he acted in conformity . . . where he encountered credible accusations of child sexual abuse by members of his clergy." In sum[*2], plaintiffs argue that the Bishop "was well aware of credible allegations of child sexual abuse committed by these six priests" and protected and insulated such priests, thereby protecting "the culture of pedophilia" in the Diocese. Significantly, plaintiffs stated that they sought the evidence not to corroborate the acts of Melfe, but to establish institutional negligence and statutory violations, which constitute the Diocese's actual practice or protocol. The Diocese opposed plaintiffs' motion and cross-moved for a protective order pursuant to CPLR 3103 (a) and (b) to preclude the production of files related to the six nonparty priests. Plaintiffs then replied in opposition to the Diocese's cross motion.
In October 2020, Supreme Court granted plaintiffs' motion to compel, ruling that plaintiffs demonstrated that disclosure of the subject files could lead to admissible evidence, including that the Diocese and the Bishop "had a practice or custom of retaining priests who had credibly been accused of child sexual abuse." The court noted that whether the files contain admissible evidence is a question for the trial court to decide. Additionally, the court rejected the Diocese's argument, in opposition to the motion to compel, that the files may contain privileged evidence, and ruled that the possibility of privileged information does not "justify a blanket denial" of plaintiffs' discovery requests. The court thus denied the Diocese's cross motion for a protective order. The Diocese appeals.[FN2]
The Diocese argues that Supreme Court erred in granting plaintiffs' motion to compel and in denying its cross motion for a protective order because plaintiffs' requested discovery pertains to irrelevant allegations of abuse of unrelated priests. "CPLR 3101 mandates full disclosure of all matter material and necessary in the prosecution or defense of an action" (Palmatier v Mr. Heater Corp., 156 AD3d 1167, 1168 [2017] [internal quotation marks and citations omitted]; see Forman v Henkin, 30 NY3d 656, 661 [2018]). "The words, 'material and necessary,' are to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial" (Galasso v Cobleskill Stone Prods., Inc., 169 AD3d 1344, 1345 [2019] [internal quotation marks and citations omitted]; see Hayes v Bette & Cring, LLC, 135 AD3d 1058, 1059 [2016]). The party seeking the discovery bears the burden of proving that the discovery request is reasonably calculated to yield material and necessary information (see Catlyn & Derzee, Inc. v Amedore Land Devs., LLC, 166 AD3d 1137, 1141 [2018]). "Supreme Court is vested with broad discretion in controlling discovery and disclosure, and generally its determinations will not be disturbed in the absence of a clear abuse of discretion" (Gold v Mountain Lake Pub. Telecom., 124 AD3d 1050, 1051 [2015] [internal quotation marks and citations omitted]; see Div-Com, Inc. v Tousignant, 116 AD3d [*3]1118, 1119 [2014]).
As relevant here, "New York courts have long resisted allowing evidence of specific acts of carelessness or carefulness to create an inference that such conduct was repeated when like circumstances were again presented" (Halloran v Virginia Chems., 41 NY2d 386, 391 [1977]; accord Gushlaw v Roll, 290 AD2d 667, 670 [2002]). However, precedent makes clear that, "where the issue involves proof of a deliberate and repetitive practice, a party should be able, by introducing evidence of such habit or regular usage, to allow the inference of its persistence, and hence negligence on a particular occasion" (Halloran v Virginia Chems., 41 NY2d at 392; see Martin v Timmins, 178 AD3d 107, 109-110 [2019]). "Custom and practice evidence draws its probative value from repetition and unvarying uniformity of the procedure involved as it depends on the inference that a person who regularly follows a strict routine in relation to a particular repetitive practice is likely to have followed that same strict routine at a specific date or time relevant to the litigation" (Galetta v Galetta, 21 NY3d 186, 197-198 [2013]; see Soltis v State of New York, 188 AD2d 201, 203 [1993]).
Here, plaintiffs, in their complaint, allege that Melfe sexually abused them from 1969 through 1979 and that the Diocese and the Bishop had knowledge of the same. Plaintiffs assert, and the Bishop concedes, that the six nonparty priests were removed from the Diocese in 2002 after having been credibly accused of acts of child sexual abuse, acts that had been committed more than 15 years prior. Plaintiffs also assert that the Bishop had knowledge of abuse by both Melfe and Edward C. Pratt, one of the nonparty priests, occurring in the late 1970s and 1980s, yet the Bishop permitted both priests to remain at the Diocese. From the foregoing, plaintiffs infer that the Bishop, and thus the Diocese, were aware of credible allegations of abuse pertaining to the six nonparty priests, and they seek discovery to establish that the Diocese engaged in a habit or pattern of conduct when notified with allegations of child sexual abuse committed by members of its clergy. Because plaintiffs' negligent supervision claims require them to prove that the Diocese knew or should have known of Melfe's propensity to abuse minor children (see Doe v Heckeroth Plumbing & Heating of Woodstock, Inc., 192 AD3d 1236, 1238 [2021]; Doe v Chenango Val. Cent. School Dist., 92 AD3d 1016, 1016-1017 [2012]), evidence of the Diocese's deliberate and repetitive practice of silencing accusations, if any, is relevant and could permit an inference that the Diocese was negligent in this particular instance by failing to act when confronted with allegations of Melfe's abuse (see Gold v Mountain Lake Pub. Telecom., 124 AD3d at 1051-1052; see also Rivera v Anilesh, 8 NY3d 627, 633-634 [2007]; Halloran v Virginia Chems., 41 NY2d at 391). Accordingly, Supreme Court providently exercised its discretion in determining that [*4]the requested files are subject to disclosure inasmuch as plaintiffs established that the files are material and necessary to their claims (see Palmatier v Mr. Heater Corp., 156 AD3d at 1169; compare Aaron v Pattison, Sampson, Ginsberg & Griffin, P.C., 69 AD3d 1084, 1085-1086 [2010]).
Although the Diocese raises several arguments concerning the appropriateness of habit evidence in this context — namely, that it is prejudicial and that the circumstances surrounding allegations of abuse vary and do not yield habitual responses from the Diocese — these arguments conflate plaintiffs' requirement on their motion to compel with plaintiffs' future requirements to introduce the files into evidence. For now, on their motion to compel discovery, plaintiffs are merely required to show that their discovery request is reasonably calculated to yield material and necessary information (see Catlyn & Derzee, Inc. v Amedore Land Devs., LLC, 166 AD3d at 1141). Whether plaintiffs can actually demonstrate "a sufficient number of instances" of the Diocese's repetitive conduct in order to introduce the subject files into evidence as habit evidence is plaintiffs' future burden (Gucciardi v New Chopsticks House, Inc., 133 AD3d 633, 634 [2015]; see Rigie v Goldman, 148 AD2d 23, 29-30 [1989]).
Moreover, the Diocese failed to meet its burden to prove that the files are immune from discovery. The party opposing the discovery request bears the burden of showing the requested items are exempt or immune from disclosure (see NYAHSA Servs., Inc., Self-Ins. Trust v People Care Inc., 155 AD3d 1208, 1209 [2017]), and the opposing party cannot satisfy this burden "with wholly conclusory allegations" (Madison Mut. Ins. Co. v Expert Chimney Servs., Inc., 103 AD3d 995, 996 [2013] [internal quotation marks and citation omitted]). In its response to plaintiffs' amended notice for discovery and inspection, the Diocese argued against disclosure of the subject files on the ground that they contain "privileged communications, privileged documents pursuant to the [CPLR], or work-product"; however, the Diocese failed to signal which CPLR provision afforded the documents immunity from disclosure and also neglected to explain why such materials were privileged. Subsequently, in its opposition papers to the motion to compel and in support of its cross motion for a protective order, the Diocese did not make a privilege argument, but rather focused on the relevancy inasmuch as the complaint does not allege any abuse of plaintiffs by the six nonparty priests. On appeal, the Diocese again argues that the discovery is privileged, but without explanation.[FN3] Because the Diocese's assertions that the material is privileged or constitutes work product is conclusory, the Diocese did not meet its burden to show that the demanded files are immune from discovery (see Madison Mut. Ins. Co. v Expert Chimney Servs., Inc., 103 AD3d at 996-997; Claverack Coop. Ins. Co. v Nielsen, 296 AD2d 789, 789-790 [2002[*5]]). After all, "[a] court is not required to accept a party's characterization of material as privileged or confidential" (John Mezzalingua Assoc., LLC v Travelers Indem. Co., 178 AD3d 1413, 1415 [2019] [internal quotation marks and citations omitted]).
Furthermore, to the extent that the Diocese argues that files pertaining to the six nonparty priests should not be disclosed because the six priests were removed 23 years after Melfe left the Diocese, this argument incorrectly emphasizes the timing of the priests' removal instead of the timing of the purported abuse and the Diocese's awareness of such abuse. To that end, plaintiffs argue that the Diocese was aware of credible allegations of child sex abuse committed by the six nonparty priests, as well as Melfe, and chose to protect and insulate the priests, thereby protecting the Diocese's "culture of pedophilia." Thus, the timing of the six nonparty priests' removal — 23 years after Melfe's exit from the Diocese in 1979 — is immaterial; the record contains allegations that when the Bishop removed the six nonparty priests from the Diocese in 2002, the Bishop noted that the priests were found to have committed child sexual abuse "more than 15 years ago." Accordingly, it is possible that the abuse committed at the hands of the six nonparty priests occurred in the same or similar time frame as the abuse committed by Melfe.
Bearing in mind Supreme Court's broad discretion in controlling discovery, as well as its authority to determine what is material and necessary pursuant to CPLR 3101, the court properly exercised its discretion in determining that the requested files are subject to disclosure via plaintiffs' motion to compel (see Gold v Mountain Lake Pub. Telecom., 124 AD3d at 1052). However, because the Diocese raises a compelling argument about the need to protect the privacy of victims — whose information may be contained in the subject files but who may not wish to have their allegations disclosed — prior to the files being turned over to plaintiffs, the court is directed to conduct an in camera review of the files to redact any information that could identify the victims so as "to protect [their] privacy interests" (Detraglia v Grant, 68 AD3d 1307, 1308 [2009]; see Matter of Thomas v New York City Dept. of Educ., 103 AD3d 495, 499 [2013]).
Egan Jr., J.P., Aarons, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by requiring Supreme Court to conduct an in camera review of the subject files to ensure victim privacy, and, as so modified, affirmed.



Footnotes

Footnote 1: Melfe has not participated in this matter and is alleged to be deceased.

Footnote 2: This Court granted a motion by Zero Abuse Project, a nonprofit "dedicated to protecting children from abuse and sexual assault," for permission to file an amicus curiae brief.

Footnote 3: The Diocese's reliance on Krystal G. v Roman Catholic Diocese of Brooklyn (34 Misc 3d 531 [Sup Ct, Kings County 2011]) in arguing that discovery demands "for unrelated allegations" "against priests other than the alleged perpetrator" have been rejected by courts is inapposite to the circumstances of this case. Specifically, the plaintiffs therein never raised a habit argument as plaintiffs have done here and plaintiffs here have not requested the treatment records of the six nonparty priests (id. at 531-546).