Harmon v Diocese of Albany (2022 NY Slip Op 02596)

Harmon v Diocese of Albany

2022 NY Slip Op 02596

Decided on April 21, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 21, 2022

532970 533033
[*1]Michael Harmon, Respondent,
v
Diocese of Albany et al., Appellants.

Calendar Date:February 9, 2022

Before:Lynch, J.P., Clark, Aarons, Colangelo and Fisher, JJ.

Tobin and Dempf, LLP, Albany (Michael L. Costello of counsel) and Phelan, Phelan & Danek LLP, Albany (Timothy S. Brennan of counsel), for appellants.
Marsh Law Firm PLLC, New York City (James R. Marsh of counsel) and Pfau Cochran Vertetis Amala PLLC, New York City (Mallory C. Allen of counsel), for respondent.

Colangelo, J.
Appeals from an order and a corrected order of the Supreme Court (Mackey, J.), entered January 4, 2021 and January 6, 2021 in Albany County, which, among other things, partially granted plaintiff's motion to compel discovery.
Plaintiff commenced this action in March 2020 pursuant to the Child Victims Act (see CPLR 214-g [hereinafter CVA]) for injuries sustained as a result of alleged sexual abuse committed by Edward Pratt while he was employed as a priest by defendant Diocese of Albany (hereinafter the Diocese).[FN1] Plaintiff alleges that from 1980 to 1985, when plaintiff was 11 to 15 years old, Pratt sexually abused him while he was living at defendant St. Catherine's Center for Children, a children's group home, and that the Diocese had knowledge of this abuse and was complicit in its continuance. As relevant here, Pratt's name is included on a list — maintained by the Diocese — of priests credibly accused of sexual misconduct with a minor while serving as a priest for the Diocese. Plaintiff's complaint asserts causes of action for negligence and intentional infliction of emotional distress against both defendants. Following joinder of issue, plaintiff noticed certain records for production, including Pratt's personnel file, the files of the other credibly accused priests and certain records concerning the Diocese's Independent Mediation Assistance Program (hereinafter IMAP). Thereafter, plaintiff moved to compel production of documents and records alleged to have been improperly withheld. Defendants cross-moved for a protective order (see CPLR 3103 [a], [b]) seeking to preclude further document production and responses to plaintiff's notice to produce.
By order and corrected order entered January 4, 2021 and January 6, 2021, respectively, Supreme Court granted plaintiff's motion with respect to Pratt's personnel file to the extent of ordering disclosure of a memo and a report, as well as correspondence between Bishop Howard Hubbard and a psychologist, to whom Pratt had been referred by the Bishop. In doing so, the court rejected defendants' assertion that the materials were privileged or otherwise exempt from discovery. The court ordered disclosure of the files of the priests credibly accused of sexual abuse and the IMAP records, subject to certain redactions and other limitations. Defendants appeal from the order and the corrected order.[FN2]
"CPLR 3101 mandates full disclosure of all matter material and necessary in the prosecution or defense of an action" (Melfe v Roman Catholic Diocese of Albany, N.Y., 196 AD3d 811, 813 [2021] [internal quotation marks and citations omitted]; see DiCostanzo v Schwed, 146 AD3d 1044, 1045 [2017]). "The words, material and necessary, are to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial" (Galasso v Cobleskill Stone Prods., Inc., 169 AD3d 1344, 1345 [2019] [internal quotation marks and citations omitted]; see [*2]Hayes v Bette & Cring, LLC, 135 AD3d 1058, 1059 [2016]). "[I]f there is any possibility that the information is sought in good faith for possible use as evidence-in-chief or in rebuttal or for cross-examination, it should be considered evidence material in the prosecution or defense" (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406-407 [1968] [internal quotation marks and citation omitted]). In addition, the court may take into account issues raised by the assertion of affirmative defenses (see Matter of Saratoga Prop. Devs, LLC v Assessor of City of Saratoga Springs, 62 AD3d 1107, 1109 [2009]). The party seeking discovery bears the burden of proving that the discovery request is reasonably calculated to yield material and necessary information (see Catlyn & Derzee, Inc. v Amedore Land Devs., LLC, 166 AD3d 1137, 1141 [2018]). "[T]he burden of establishing any right to protection is on the party asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity" (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 377 [1991] [citations omitted]). "A trial court, however, has broad discretion in supervising disclosure and may, on its own initiative or on the motion of a party, issue a protective order denying, limiting, conditioning or regulating the use of any disclosure device so as to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts" (DiCostanzo v Schwed, 146 AD3d at 1045 [2017] [internal quotation marks and citations omitted]). Further, "its determinations will not be disturbed in the absence of a clear abuse of discretion" (Gold v Mountain Lake Pub. Telecom., 124 AD3d 1050, 1051 [2015] [internal quotation marks and citations omitted]; see Div-Com, Inc. v Tousignant, 116 AD3d 1118, 1119 [2014]).
Defendants contend that Supreme Court erred in directing them to disclose certain information from Pratt's personnel file, namely, a "[m]emo" and a "[r]eport," as well as correspondence between the Bishop and a psychologist it retained to determine, among other things, the appropriateness of Pratt's resumption of his ministry and his risk of recidivism. Defendants claim that disclosure of the memo and the report is protected by attorney-client privilege, and that disclosure of the psychologist's correspondence is protected by physician-patient privilege. CPLR 3101 "establishes three categories of protected materials . . .: privileged matter, absolutely immune from discovery (CPLR 3101 [b]); attorney's work product, also absolutely immune (CPLR 3101 [c]); and trial preparation materials [(CPLR 3101 [d] [2])], which are subject to disclosure only on a showing of substantial need and undue hardship" (Forman v Henkin, 30 NY3d 656, 661-662 [2018] [internal quotation marks and citation omitted]). As an initial matter, we note that Supreme Court reviewed a privilege log and conducted an in camera inspection [*3]of the documents in question that were submitted by the Diocese prior to its ruling. The memo and the report were prepared by a private investigator and reflect the investigator's interviews with Pratt, regarding alleged sexual abuse, and with a man who claimed that Pratt had abused him in a closet at his junior high school in the 1970s. The report also contains a list of six alleged victims who made allegations against Pratt. None of these documents contains attorney-client communication or were created by counsel so as to constitute attorney work product. The list of the six alleged victims and only the name, last known address and phone number of the man allegedly abused in a school closet were properly subject to disclosure pursuant to the provision of CPLR 3101 (d) (2), which permits disclosure of material prepared for litigation where the plaintiff has substantial need for it and is unable to obtain its substantial equivalent (see Yasnogordsky v City of New York, 281 AD2d 541, 541 [2001]; Rochford v Long Is. R.R. Co., 273 AD2d 291, 292 [2000]). In connection with disclosure of this information, as defendants "failed to establish that the withheld documents were prepared solely in anticipation of litigation, the burden did not shift to plaintiff to demonstrate an undue hardship justifying disclosure" (Cascade Bldrs. Corp. v Rugar, 154 AD3d 1152, 1155 [2017]; see CPLR 3101 [d] [2]).
As Supreme Court correctly found, Pratt waived any privilege with respect to the psychologist's report by consenting to its release to the Bishop, and defendants failed to establish that the authorization under which the psychologist communicated with the Bishop was limited in any way. Moreover, defendants represented to Supreme Court during oral argument that the Diocese engaged the services of the psychologist to evaluate Pratt's suitability to return to the ministry, stating that "once engaged by the Diocese[,] the relationship is between the Diocese and the physician or psychologist and then the clergyman assents to being evaluated having the result submitted or produced to his Bishop." We find that argument unavailing. The report from the psychologist was directly addressed to the Bishop, and any arrangement between those two does not create a psychologist-patient relationship (see CPLR 4507; compare Friel v Papa, 87 AD3d 1108, 1111 [2011]). In any event, having agreed to the direct dialogue between the Bishop and the psychologist, Pratt waived any privilege (see Matter of Asianna NN. [Kansinya OO.], 119 AD3d 1243, 1246 [2014], lv denied 24 NY3d 907 [2014]; State of New York v General Elec. Co., 201 AD2d at 802-803; cf. Friel v Papa, 87 AD3d at 1111). In addition, any privilege was destroyed by the submission of Pratt's file, including the psychologist's report, to the Attorney General's office in connection with its civil investigations in 2018 into clergy sexual abuse against each Diocese in New York.
We find that Supreme Court did not abuse its [*4]discretion in ordering disclosure of the personnel files of the 48 former priests whose names are on the Diocese's list of credibly accused clergy. The court balanced plaintiff's need for the files against the burden claimed by defendants in retrieving, redacting and copying the files, and the court limited disclosure to files containing a reference to possible misbehavior that occurred before 1985, when plaintiff's alleged abuse ended, with redactions of the names and identifying information of alleged victims. The court also conducted an in camera review of defendants' privileges. In ordering disclosure, the court properly took notice of defendants' disclosure of these files to the Attorney General's office, thereby minimizing the burden on defendants. Moreover, plaintiff demonstrated materiality and a need for the information. Defendants' fourteenth affirmative defense alleges that their actions "were in conformity with professional best practices and with the available knowledge in the community and met applicable standards at the time." At oral argument before Supreme Court, defendants pledged to call two experts at trial to testify as to how sexual abuse allegations were customarily handled at the time of plaintiff's alleged abuse. Defendants have made what they knew about sexual abuse within the Diocese central to their case, and the court properly found that defendants themselves opened the door to discovery of what they knew about the clergy sex abuse problem.
We further find that plaintiff demonstrated that the information in the personnel files of the nonparty priests is relevant to prove that the Diocese's practice was to retain priests credibly accused of child sexual abuse, permitting the inference that defendants were aware of credible allegations of abuse pertaining to these priests, knew or should have known of Pratt's propensity to abuse minor children, including plaintiff, and that the Diocese was negligent in failing to act to protect plaintiff when confronted with allegations of Pratt's abuse (see Rivera v Anilesh, 8 NY3d 627, 633-634 [2007]; see also Gold v Mountain Lake Pub. Telecom, 124 AD3d at 1051-1052). Accordingly, Supreme Court providently exercised its discretion in determining that the requested files are subject to disclosure (see Melfe v Roman Catholic Diocese of Albany, N.Y., 196 AD3d at 814-815). As relevant here, when negligence is an issue, "New York courts have long resisted allowing evidence of specific acts of carelessness or carefulness to create an inference that such conduct was repeated when like circumstances were again presented" (id. at 813 [internal quotation marks and citations omitted]). However, "where the issue involves proof of a deliberate and repetitive practice, a party should be able, by introducing evidence of such habit or regular usage, to allow the inference of its persistence, and hence negligence on a particular occasion" (id. at 814 [internal quotation marks and citations [*5]omitted]).
The Diocese's IMAP was initiated in 2004 and allowed victims of time-barred sexual abuse claims to file complaints and settle their claims though mediation. For the reasons set forth above with respect to disclosure of the list of others who made allegations against Pratt, we find that Supreme Court providently exercised its discretion in granting plaintiff's motion to compel discovery of the Diocese's IMAP records. The disclosure was appropriately limited to Pratt's files and the files of other credibly accused priests that contain a reference to possible misbehavior occurring prior to 1985 when plaintiff alleges his abuse ended, and directed redaction of the names and other identifying information of the victims. For all these reasons, we affirm.
Lynch, J.P., Clark, Aarons and Fisher, JJ., concur.
ORDERED that the appeal from the order is dismissed, with costs.
ORDERED that the corrected order is affirmed, with costs.

Footnotes

Footnote 1: Pratt was allegedly deceased when this action was commenced.

Footnote 2: As the January 6, 2021 corrected order superseded the January 4, 2021 order, defendants' appeal from the order is dismissed (see Matter of Brian W. v Mary X., 200 AD3d 1439, 1441 n 1 [2021]).