Maida v Diocese of Brooklyn (2025 NY Slip Op 06314)

Maida v Diocese of Brooklyn

2025 NY Slip Op 06314

Decided on November 19, 2025

Appellate Division, Second Department

Dillon, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 19, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
CHERYL E. CHAMBERS
LILLIAN WAN
JAMES P. MCCORMACK, JJ.

2023-03183
 (Index No. 523967/20)

[*1]Eric Maida, respondent, 
v
Diocese of Brooklyn, appellant, et al., defendants.

APPEAL by the defendant Roman Catholic Diocese of Brooklyn, New York, sued herein as Diocese of Brooklyn, in an action to recover damages for negligent hiring, retention, and supervision and intentional infliction of emotional distress, from an order of the Supreme Court (Laurence L. Love, J.), dated February 14, 2023, and entered in Kings County. The order, insofar as appealed from, granted that branch of the plaintiff's motion which was to compel the defendant Roman Catholic Diocese of Brooklyn, New York, sued herein as Diocese of Brooklyn, to produce certain unredacted pages of a clergy file and denied that branch of the cross-motion of the defendant Roman Catholic Diocese of Brooklyn, New York, sued herein as Diocese of Brooklyn, which was pursuant to CPLR 3103(a) for a protective order preventing disclosure of those pages of the clergy file.

Shaub, Ahmuty, Citrin & Spratt, LLP, Lake Success, NY (Robert M. Ortiz, Jeremy S. Rosof, and Nicholas Tam of counsel), for appellant.
Pfau Cochran Vertetis Amala PLLC, New York, NY (Anelga Doumanian of counsel), for respondent.

DILLON, J.P.

OPINION & ORDER
This appeal permits us to address two principal sets of issues. The first is a rare two-step analysis regarding the potential disclosure of progress reports and letters generated at the request of a religious organization to determine whether an alleged pedophile priest could be safely returned to duties at a parish. Under the circumstances of this appeal, we hold that the progress reports of an alleged pedophile priest that are shared with his Bishop with accompanying letters, to assist the Bishop in determining whether the priest may return to parish duties, fall outside the scope of the clergy-penitent privilege of confidentiality under CPLR 4505. Further, we hold that the physician-patient and psychologist-patient privileges of confidentiality for progress reports and letters generated by a psychological treatment facility to assist the same Bishop's determination, and disclosed to the Bishop for that purpose, are waived under CPLR 4504 and 4507. Relatedly, we hold that the Appellate Division, Second Department, agrees with the reasoning of the Appellate Divisions, First and Third Departments, that in actions pursuant to the Child Victims Act (CVA) (see CPLR 214-g), courts may exercise discretion in favor of requiring the unredacted disclosure of the identities of alleged abuse victims other than the plaintiff, so long as those abuses were committed by the same alleged abuser rather than by any other alleged abuser.
I. Facts
The plaintiff alleged that from approximately 1977 to 1980, when he was approximately 12 to 15 years old and a parishioner, student, and altar boy, he was sexually abused by a priest, Father James O'Brien. In 2020, the plaintiff, who was by then an adult, commenced this action pursuant to the CVA against, among others, the defendant Roman Catholic Diocese of [*2]Brooklyn, New York, sued herein as Diocese of Brooklyn (hereinafter the Diocese), to recover damages for personal injuries he allegedly sustained as a result of the abuse. The complaint asserted causes of action alleging negligent hiring, retention, and supervision and intentional infliction of emotional distress. The complaint alleged, inter alia, that the Diocese knew or should have known of O'Brien's propensity to abuse children.
As part of discovery, the Diocese served a redacted copy of O'Brien's clergy file, and a redaction and privilege log. The plaintiff thereafter moved to compel the Diocese to produce an unredacted copy of the clergy file. The Diocese cross-moved pursuant to CPLR 3103(a) for a protective order preventing the disclosure of the redacted portions of the clergy file. The Diocese contended, among other things, that the redactions were appropriate in light of certain CPLR article 45 privileges, including the physician-patient privilege under CPLR 4504, the clergy-penitent privilege under CPLR 4505, and the psychologist-patient privilege under CPLR 4507. The Supreme Court subsequently ordered an in camera review of the unredacted clergy file. In an order dated February 14, 2023, the court, inter alia, granted that branch of the plaintiff's motion which was to compel the Diocese to produce certain unredacted pages of the clergy file and denied that branch of the Diocese's cross-motion which was for a protective order with respect to those pages of the clergy file. The Diocese appeals.
II. Discoverability
The general rules for the discoverability of matter are well developed. CPLR 3101(a) directs that "[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action." It extends to the agents of a party to litigation (see Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 376; Ferrick v Diocese of Brooklyn, 239 AD3d 600, 601). "Materiality and necessity must be interpreted liberally to require disclosure . . . of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity" (Ferrick v Diocese of Brooklyn, 239 AD3d at 601 [internal quotation marks omitted]; see Matter of Kapon v Koch, 23 NY3d 32, 38; Lurie v Lurie, 226 AD3d 992, 995). "[A]ny matter which may lead to the discovery of admissible proof is discoverable, as is any matter which bears upon a defense, even if the facts themselves are not admissible" (Holloway v Orthodox Church in Am., 232 AD3d 773, 774 [internal quotation marks omitted]; see Cajamarca v Osatuk, 163 AD3d 619, 620). The test is one of usefulness and reason (see Holloway v Orthodox Church in Am., 232 AD3d at 774; Diaz v Minhas Constr. Corp., LLC, 188 AD3d 812, 813; Auerbach v Klein, 30 AD3d 451, 452).
The supervision of discovery, and the setting of reasonable terms and conditions for its disclosure, are matters within the sound discretion of the trial court (see Holloway v Orthodox Church in Am., 232 AD3d at 774; Pulgarin v Richmond, 219 AD3d 1356, 1358). Personnel records generally are discoverable in actions where, as here, the plaintiff seeks to recover damages for the defendant's alleged negligent hiring, retention, and supervision (see Holloway v Orthodox Church in Am., 232 AD3d at 774; Blanco v County of Suffolk, 51 AD3d 700, 701-702).
Nevertheless, the discoverability of matter is limited by the recognized statutory privileges of confidentiality, primarily those set forth in CPLR article 45. At issue in this appeal are the clergy-penitent privilege under CPLR 4505, the physician-patient privilege under CPLR 4504, and the psychologist-patient privilege under CPLR 4507.
III. The Clergy-Penitent Privilege
The Diocese contends that the Supreme Court erred in ordering disclosure of unredacted progress reports and letters, which were sent to O'Brien's Bishop through Auxiliary Bishop Anthony J. Bevilacqua, because these materials were sent to aid the Bishop in spiritually advising O'Brien and, therefore, were properly redacted based on the clergy-penitent privilege under CPLR 4505.
CPLR 4505 provides, in part, that "a clergyman, or other minister of any religion or duly accredited Christian Science practitioner, shall not be allowed [to] disclose a confession or confidence made to him [or her] in his [or her] professional character as spiritual advisor." The privilege was not recognized at common law, but reflects a contemporary public policy that persons be able to confide in those offering spiritual guidance without fear of reprisal, so that spiritual harmony may be realized between one's self and others (see Matter of Keenan v Gigante, 47 NY2d 160, 166).
The statute's application to "any religion" signifies that the privilege is broadly conferred to all faiths (see Cox v Miller, 296 F3d 89, 106-107 [2d Cir] [applying New York law]). [*3]The statutory reference to a "confession" refers to the Catholic sacrament of Penance, where sins are confessed to a priest in order to obtain absolution. The statutory reference to a "confidence" refers to a much wider set of private communications applicable to all religions, beyond Catholic confession, where disclosures are made to a clergyperson while seeking spiritual guidance (see People v Carmona, 82 NY2d 603, 608-609; Matter of Keenan v Gigante, 47 NY2d at 166; S.E. v Diocese of Brooklyn, 240 AD3d 741, 743; People v Drelich, 123 AD2d 441, 442-443). The privilege does not apply to secular conversations that are with a clergyperson by happenstance (see People v Carmona, 82 NY2d at 609; S.E. v Diocese of Brooklyn, 240 AD3d at 743; Cox v Miller, 296 F3d at 106). The confession or confidence must instead be made to the clergyperson while acting within his or her formal role as a "spiritual advisor" (CPLR 4505; see Lightman v Flaum, 97 NY2d 128, 134; Matter of Keenan v Gigante, 47 NY2d at 166). Disclosure of the contents of the confession or confidence cannot be compelled from the clergyperson, whatever the relevance or importance of the information to another party.
The privilege of confidentiality belongs to the congregant who seeks and obtains the spiritual advice (see Lightman v Flaum, 97 NY2d at 134; L.F. v M.A., 78 Misc 3d 787, 796 [Sup Ct, NY County]). CPLR 4505 therefore acknowledges that the privilege may be waived, though only by the congregant. The clergyperson is free to disclose a confession or confidence only if there is a waiver. Indeed, the clergyperson may not continue to assert the privilege of confidentiality after the privilege has been waived by the congregant (see L.F. v M.A., 78 Misc 3d at 796; De'Udy v De'Udy, 130 Misc 2d 168, 174 [Sup Ct, Nassau County]).
The waiver of the privilege can be made by the congregant in an expressed fashion. But it may also occur by conduct. For instance, if a person seeking guidance utters a confidence to a clergyperson while a non-clergyperson is also present at the same time and place, the privilege of confidentiality is destroyed by the presence of the third person regardless of the spiritual advice sought or the guidance conferred (see Lightman v Flaum, 278 AD2d 373, 374, affd 97 NY2d 128; People v Harris, 34 Misc 3d 281, 287 [Sup Ct, Kings County]; People v Brown, 82 Misc 2d 115, 119 [Sup Ct, NY County]). The privilege is similarly waived if the clergyperson is instructed to convey the information to a third party (see People v Dixon, 199 AD2d 332, 333). Arguably, the privilege may also be waived, impliedly, if a person utters confessions or confidences to a clergyperson while seeking spiritual advice, and then discloses to a third person that those confessions or confidences were made to that clergyperson (see Vincent C. Alexander, Prac Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 4505 [2012]).
Here, the documents at issue, consisting of progress reports and letters sent to Bevilacqua from staff members of the facility where O'Brien received mental health treatment, were not authored in connection with religious absolution or for spiritual advice or counseling (see People v Carmona, 82 NY2d at 609; S.E. v Diocese of Brooklyn, 240 AD3d at 743). The documents pertained to mental health, not spiritual health, and therefore fall outside the scope of the clergy-penitent privilege under CPLR 4505. The records establish that the Diocese was paying the cost of O'Brien's mental health treatment. Staff members expressed the hope that through their "work on Father O'Brien's behalf we will be of service to you and your diocese," further underscoring that the treatment was related more to the priest's future employment and duties with the Diocese, which are secular considerations outside the scope of CPLR 4505, than to the priest's personal spiritual counseling within the scope of the statute (see Krystal G. v Roman Catholic Diocese of Brooklyn, 34 Misc 3d 531, 544 [Sup Ct, Kings County]).
The affidavit of Reverand Monsignor Anthony Hernandez, proffered on behalf of the Diocese, makes no difference to the analysis. Hernandez explained that the Bishop is obligated to provide spiritual counseling and to aid in the physical and mental well-being of priests employed by the Diocese. While Hernandez's description may be entirely true and accurate, it is not relevant to whether the specific documents at issue qualify as confidential communications to O'Brien's Bishop for the purpose of spiritual guidance. The documents, which speak for themselves, were addressed to mental health rather than to spiritual advice or guidance, and demonstrate that they are not within the scope of the clergy-penitent privilege under CPLR 4505.
IV. The Physician-Patient and Psychologist-Patient Privileges
The Diocese further contends that the Supreme Court erred in ordering disclosure of unredacted copies of the progress reports and letters at issue, because these materials were properly redacted based on the physician-patient privilege under CPLR 4504 and the similar psychologist-patient privilege under CPLR 4507.
Both privileges recognize that by maintaining the confidentiality of both forms of professional records, a public policy is served whereby persons are encouraged to seek necessary assistance where sensitive information is expected to be disclosed (see Matter of Grand Jury Proceedings [Doe], 56 NY2d 348, 352; Siegel v Snyder, 202 AD3d 125, 131). The privileges encourage patients to seek treatment and to be frank in describing symptoms so that the most effective treatment can be obtained for the benefit of the patient (see Matter of Camperlengo v Blum, 56 NY2d 251, 254-255; Matter of Farrow v Allen, 194 AD2d 40, 43).
CPLR 4504(a) provides, in part, that "a person authorized to practice medicine, registered professional nursing, licensed practical nursing, dentistry, podiatry or chiropractic shall not be allowed to disclose any information which he [or she] acquired in attending a patient in a professional capacity, and which was necessary to enable him [or her] to act in that capacity" (see Siegel v Snyder, 202 AD3d at 134; Hughson v St. Francis Hosp. of Port Jervis, 93 AD2d 491, 497). The privilege protects both the patient and the professional from being compelled to disclose the substance of the qualifying communications (see Williams v Roosevelt Hosp., 66 NY2d 391, 396; Mullen v Wishner, 172 AD3d 1386, 1388). It extends to both oral statements and documents, including hospital and medical records which are largely created from communications imparted by the patient to the professional (see Williams v Roosevelt Hosp., 66 NY2d at 396; Mullen v Wishner, 172 AD3d at 1388). It also extends to the professional's observations of the patient's appearance and symptoms to the extent they go beyond what would be obvious to a layperson (see Dillenbeck v Hess, 73 NY2d 278, 284; Mullen v Wishner, 172 AD2d at 1388; Hughson v St. Francis Hosp. of Port Jervis, 93 AD2d at 498-499).
Like the clergy-penitent privilege, confidential information between physicians and patients may be disclosed only where there is a waiver of the privilege by its holder (see S.M. v City of New York, 225 AD3d 558, 559-560). The privilege may be expressly or impliedly waived by the patient (see CPLR 4504[a]; Dillenbeck v Hess, 73 NY2d at 287-288). An implied waiver is most frequently seen in personal injury actions, where the confidentiality of medical records is waived by plaintiffs who commence litigation that places the nature and extent of their injuries at issue (see generally Prink v Rockefeller Ctr., 48 NY2d 309, 316). Also, the confidentiality of information is deemed to be waived when a patient places physician-patient information into the hands of a third party who is unconnected to his or her treatment and who is not subject to any privilege (see People v Bloom, 193 NY 1, 7-8; People v Martinez, 22 AD3d 318; Matter of Farrow v Allen, 194 AD2d at 44).
CPLR 4507 extends a similar privilege of confidentiality to the communications and records arising from professional consultations between registered psychologists and their patients. The psychologist-patient privilege has been recognized as generally applicable for defendants in actions where plaintiffs alleging sexual abuse have sought damages from religious institutions for negligent hiring, retention, and supervision (see e.g. Krystal G. v Roman Catholic Diocese of Brooklyn, 34 Misc 3d at 544).
CPLR 4507 expressly defines the confidential relations and communications between psychologists and patients as "placed on the same basis as those provided by law between attorney and client," and counterintuitively, not on the same basis as physicians and patients. The difference is more than esoteric. Interpretations of the psychologist-patient privilege therefore rely upon the analogous decisional authorities regarding attorney-client confidentiality rather than those of physician-patient confidentiality, which in certain circumstances make a difference as to whether the privilege is waived (see e.g. People v Wilkins, 65 NY2d 172, 179-180). For instance, in Wilkins, a criminal defendant who testified on his own behalf in support of a justification defense to the charge of manslaughter in the first degree did not waive his privilege of confidentiality as to allow the prosecution to compel his psychologist to testify to contrary information, as an attorney-client relationship does not permit an attorney to testify as a witness against a client about confidential communications (see id. at 174, 179-180). In that sense, the psychologist-patient privilege is broader and stricter than the more traditional physician-patient privilege, at least in regard to implied waivers of confidentiality.
Like the other privileges discussed here, qualifying psychologist-patient communications and records cannot be disclosed absent a waiver of the privilege by the patient (see Brown v Telerep, Inc., 263 AD2d 378, 379).
In this appeal, the progress reports and letters from the facility where O'Brien received mental health treatment, which were sent to Bevilacqua in 1982 and 1983, addressed [*4]O'Brien's treatment progress. One of the letters stated that "O'Brien has given us written permission to send progress reports to you." The confidentiality of those materials was waived by the permissive disclosure of the information to the Diocese.
There appears to be a distinction in authority between the First and Third Departments, which broadly hold that the voluntary disclosure of privileged information to a third party destroys a privilege in its entirety (see State of New York v General Elec. Co., 201 AD2d 802, 803 [3d Dept]; Matter of Farrow v Allen, 194 AD2d at 44 [1st Dept]), versus the Second Department, which honors the privilege if the disclosure is expressly limited to an employer for the purpose of making prospective staffing decisions (see Friel v Papa, 87 AD3d 1108). In Friel, a parish employee accused a priest of accessing pornographic material on a parish computer, after which the employee was fired and sued the church. The accused priest took a leave of absence from pastoral duties and received counseling. The priest later signed a narrowly-drawn authorization allowing his bishop to review the priest's counseling records, solely in connection to whether the priest could be returned to normal pastoral duties. This Court held in Friel that the limited authorization did not open the door to the blanket disclosure of the priest's full and unlimited counseling records to anyone else, including to the plaintiff in that case (see id. at 1111).
Our conclusion is not affected by this Court's earlier holding in Friel. Here, unlike in Friel, the alleged pedophile priest is not a named defendant and has not asserted any privilege over the records and letters. The Diocese, as a third party to O'Brien's mental health treatment, is not the holder of any physician-patient or psychologist-patient privilege to assert (see CPLR 4504, 4507; Dillenbeck v Hess, 73 NY2d at 289; Iseman v Delmar Med.-Dental Bldg., 113 AD2d 276, 279). In any event, the plaintiff is not necessarily seeking discovery of O'Brien's full medical or psychological records generated or maintained by the treatment facility, but instead, seeks discovery only of those reports and letters which O'Brien authorized to be disclosed to his Bishop and which the Bishop received.
Further, even assuming, arguendo, that the Diocese holds a religious, medical, or psychological privilege to assert, it has failed to provide a copy of O'Brien's authorization for the sharing of the contested documents. The Diocese bears the ultimate burden of proving its entitlement to a CPLR article 45 privilege (see Dillenbeck v Hess, 73 NY2d at 286-287 [physician-patient]; Matter of Priest v Hennessy, 51 NY2d 62, 69 [attorney-client privilege]; Matter of State of New York v Steven L., 66 AD3d 788, 789 [psychologist-patient privilege]; Lightman v Flaum, 278 AD2d at 374 [clergy-penitent privilege]). Without producing O'Brien's authorization for the court to determine its scope and limitations, if any, the Diocese cannot sustain its burden of proof that, under the strictest reading of Friel, there is any expressed limitation imposed on the disclosure of the materials as to fit within this Judicial Department's "Friel exception" (see Doe v Haight, 70 Misc 3d 715, 719 [Sup Ct, Albany County]).
Absent a Friel exception, which is inapplicable here, the law of the Second Department (see S.E. v Diocese of Brooklyn, 240 AD3d at 743-744) is consistent with that of the First and Third Departments that the voluntary disclosure of privileged information to a third party vitiates the privilege as to everyone else (see People v Martinez, 22 AD3d 318; State of New York v General Elec. Co., 201 AD2d at 803; Matter of Farrow v Allen, 194 AD2d at 44; see also People v Bloom, 193 NY at 7-8).
V. The Identity of Other Alleged Sexual Abuse Victims
The parties dispute whether the Supreme Court properly directed disclosure of the names and contact information of other alleged victims of O'Brien, as potential fact and notice witnesses, or instead should have directed a redaction of such information to safeguard privacy.
In Harmon v Diocese of Albany (204 AD3d 1270, 1272-1273), the Third Department upheld the disclosure of an investigator's report which included the names of alleged victims of sexual abuse, beyond the plaintiff, all by the same priest. Also in Harmon, the court upheld the redaction of the names and identifying information of victims of sexual abuse allegedly committed by other priests (see id. at 1275).
The First Department has likewise held that identifying information of a priest's other alleged sexual abuse victims is discoverable absent a demonstration of privilege, but that the names of victims of other alleged abusers must be redacted (see T.B. v Roman Catholic Archdiocese of N.Y., 237 AD3d 529, 530; see also J.L. v Archdiocese of N.Y., 236 AD3d 569).
We find the holdings of Harmon, T.B., and J.L. to be sound, and applicable in the Second Department in distinguishing, for discovery purposes, identifying information of alleged [*5]sexual abuse victims of the accused priest from alleged victims of other persons. Applying the same principles to this action, all of the individuals' names and contact information at issue relate specifically to abuse allegedly committed by O'Brien and, absent any overriding privilege here, are discoverable, without redaction, as relevant to issues of actual or constructive notice of that priest's alleged propensity for abuse and what steps the Diocese took to prevent children from being abused by him (see C.T. v Diocese of Brooklyn, 239 AD3d 784, 786; Halloway v Orthodox Church in Am., 232 AD3d at 774-775).
VI. Uniform Rules for Trial Courts (22 NYCRR) § 202.5(e)
As an aside, we note that while this discovery is not subject to any redactions for material that is to be given to the plaintiff, "redaction" should not be confused with the "confidentiality" mandated by the Uniform Rules for Trial Courts (22 NYCRR) § 202.5(e).
That section of the Uniform Rules provides, in part, that subject to certain exceptions, papers submitted to the court for filing shall omit or redact confidential personal information (hereinafter CPI) that would otherwise be disclosed to the public by the filing (id.). The provision applies whether an action or proceeding is electronically filed in the New York State Courts Electronic Filing System or by hard copy filings. Parallel rules apply to the Court of Claims and to the Civil, City, and District Courts of the State (see Uniform Rules for Ct Cl [22 NYCRR] § 206.5[e]; Uniform Rules for NY City Civ Ct [22 NYCRR] § 208.4[b]; Uniform Rules for City Cts Outside the City of NY [22 NYCRR] § 210.4[b]; Uniform Rules for Dist Cts [22 NYCRR] § 212.4[b]).
While those Uniform Rules contain no provision specific to the shielding from the public of the names of individuals who are alleged to have been sexually abused, particularly in CVA cases where such victims would now be adults, Uniform Rules for Trial Courts § 202.5(e)(2) authorizes trial courts to exercise discretion by, inter alia, ordering the removal of CPI from papers, or directing that papers be resubmitted with the necessary omissions, either sua sponte or upon motion of a party. The same rules, of course, vest courts with discretion to receive copies of the same papers in unrestricted form, including CPI, under seal for in camera review.
Here, while the ordered discovery is not redacted as to the plaintiff, any discovery response that is filed with the court, and thereby available to the public, must be scrubbed of its identifying CPI. The Bench and Bar are encouraged to be mindful of Uniform Rules for Trial Courts § 202.5(e), when it may apply to discovery material and otherwise, to ensure that nonparties who may have been allegedly victimized by sexual abuse, and who are inside or outside of the litigation, are not "outed" inadvertently, publicly, and avoidably.
VII. Miscellaneous
The Diocese's contention that its records must be kept confidential under federal law is without merit (see 42 USC § 290dd-2; 42 CFR part 2). The federal regulations at issue pertain to the use and disclosure of records relating to substance abuse disorders that are maintained in connection with a federally-funded program, yet it has not been shown that such substance abuse privilege is applicable here.
The Diocese's remaining contentions are without merit.
Accordingly, the order is affirmed insofar as appealed from.
CHAMBERS, WAN and MCCORMACK, JJ., concur.
ORDERED that the order is affirmed insofar as appealed from, with costs.
ENTER:
Darrell M. Joseph
Clerk of the Court